## E. ARMORER, Tutor, *v.* M. CASE, Administrator, et als.

Where, at the time of marriage, the parties did not contemplate residing in this State, were married out of it, and never resided in it, property purchased in this State, will be the property of the husband and not of the husband and wife.

Where a disposition in favor of a legatee is made in error, and results from the testator's ignorance of a material fact, and would, if carried into effect, defeat his manifest intention, it will not be enforced.

In the construction of wills a rule of primary importance is that the intention of the testator must be observed.

A legatee who voluntarily executes a will, will not be permitted to change the interpretation which his execution of it indicates.

APPEAL from the District Court of the Parish of Concordia, *Farrar*, J.
*Stacy & Sparrow*, for plaintiff:

In the interpretation of testaments, the intention of the testator is to be ascertained, C. Code., Art. 1705; 2d vol. Domat, book 2, tit. 1, sec. 6, No. 5; 7 Rob. Rep., p. 425, *Oxley* v. *Clay*, ex'r. A correct knowledge of the testator's intentions in this case is necessary to a correct decision of it; not because their execution can be enforced under the will *per se*, but because the parties have made those intentions their law, and have voluntarily executed them. Indeed,

ARMORER
v.
CASE.

without such voluntary execution, it seems more than doubtful, if the literal provisions of the will could have been enforced.

A will is not strictly a contract, yet many of the same provisions of law are applicable to both. Contracts are vitiated by errors, both of fact and of law, in the motive or bearing upon the principal case. . If the motive is apparent, although not made an express condition, if the error bears on that motive, the contract is void. C. C., Arts. 1821, 1819, 1818, 1840 ; *Tanner* v. *Robert*, 5 N. S., p. 255 ; *Berard* v. *Berard*, 2 La. Rep., p. 3.

*A. N. Ogden* and *H. B. Shaw*, for defendant and appellant :

On the first point, there can be no doubt, that the testator, having in plain and unequivocal language, disposed of one-half of the property to his son ; and one-half, not exceeding the disposable portion, the title became, at the death ie testator, absolutely vested in his son. As to the other half, he made no osition, because he erroneously supposed it did not belong to him. The ex- sion of his belief, that his wife, to whom he supposed it belonged by law, ld, at her death, give it to her daughter, could not affect the validity of the lute bequest to the son. Pandects, Lib. 25, Tit. 1, sec. 239. Nor could the ition of the testator, unless expressed in words of disposition, as an act of wn last will, and in the exercise' of his own proper dominion over the pro- r, be considered as conferring any title either on his wife or on his daughter. ase of *Theall* v. *Theall*, 7 L. R., 226 ; La. Code, Article 1705. If effect should even be given to the expressions used by him, so as to constitute a be- quest of the other half of the property, the bequest was in favor of the testator's wife, and she having died intestate, it descended in equal portions to her chil- dren. It is very clear the testator intended his wife should exercise the right of disposing of that half of the property.

CAMPBELL, J. (OGDEN, J., did not sit in this case, being of counsel. VOOR- HIES, J., absent.) This suit was instituted for the recovery of the amount of four notes for $5000 each, executed by the late *Thomas D. Purnell* in part payment for the undivided five-twelfths of a plantation, known as the Forest plantation, which was adjudicated to him at the probate sale of the property of the succession of *Mary C. Culberson*, deceased.

The respondents admit that the notes were executed by *T. D. Purnell*, but aver that they were given in error and are without consideration ; that at the time of the adjudication to him of the undivided five-twelfths of the Forest plan- tation, he was himself the owner of three-fourths of the whole plantation and the slaves thereon, and that in purchasing he was ignorant of his legal rights, and erroneously supposed that the legal title to five-twelfths of said plantation was in the succession of his sister, *Mary C. Culberson*, while in fact, she was only entitled to one-fourth thereof.

The respondents further aver that *Levi Purnell*, the father of *Thomas D. Purnell*, who died in 1835, devised to the said *Thomas* one undivided half of said plantation and slaves. That after the death of his said father, and in igno- rance of his rights under the will, and erroneously supposing that the children of his sister, *Mary Culberson*, then deceased, were equal owners with himself, of the plantation and slaves, partition thereof was made accordingly, whereby the children of his sister received one-fourth more than their legal share.

Respondents averring that two of the notes given as the price of adjudication, amounting together to ten thousand dollars, have been paid, claim to recover back the amount from the plaintiff, as tutor of the minor heirs of his sister, and also to recover the share of the negroes belonging to *T. D. Purnell*, erroneously given in the partition, with hire for their services. They claim that the notes sued on be reduced to one-half of their amount, and that they be credited with one-half of the amount of the two notes already paid and with the value of the hire of the negroes.

*Levi Purnell* and his wife, the grand-parents of the minors whose interests are involved in this controversy, resided in Mississippi. In 1833, *Purnell* purchased the Forest plantation and slaves, situated in the parish of Concordia, in this State, and died in 1835, leaving two children, *Thomas D.*, the father of the minor defendants, and *Mary C.*, the mother of the plaintiffs. He left a will in which the following clause, which has given rise to this suit, is found. "And I do further devise and bequeath to my son *Thomas* and his heirs all my undivided one-half, being all my right, interest and property in and to the following real, immovable and movable property, held as community property by myself and aforenamed beloved wife, according to the laws of said State of Louisiana, said real, immovable and movable property being in said parish of Concordia and State of Louisiana, and consisting of the Forest plantation of lands, negro slaves," etc. "And I give this property to my son *Thomas* and his heirs, under the belief that my beloved wife will, at her death, give her undivided half of the same property, as aforesaid, to our said daughter, *Mary*, and her heirs.

This will was probated in Mississippi, but not registered in Louisiana until 1851, when upon presentation of an authenticated copy of it to the Probate Court of Concordia, it was, upon defendants' petition, ordered to be executed.

Mrs. *Purnell*, the wife of the testator, *Levi*, died intestate. Besides the children *Thomas* and *Mary*, she left a daughter named *Eliza Davis*, issue of a former marriage.

On the 26th January, 1841, *Thomas Purnell* and his sister, *Mary Culberson*, present a petition praying for an inventory of the succession of their father and mother, that they be recognized as their heirs and placed in possession. On the 27th, they accepted the succession purely and simply as the forced heirs of their father and mother, and expressly stipulated a reservation to each of them respectively, of all rights under any will which may be produced.

In August, 1842, *Eliza Davis*, the half-sister of *Thomas* and *Mary*, accepts the succession of her mother, and in the same act, sells to *Thomas Purnell* and to *Culberson*, tutor, for $10,000, her interest in her mother's succession, situated in the parish of Concordia.

On the 28th December, 1843, *Purnell* and *Culberson*, as tutor of his minor children, made a partition in kind of the slaves attached to the Forest plantation, and making part of the succession of *Levi* and *Mary Purnell*, and also of the slaves purchased from *Eliza Davis*.

On the 6th April, 1844, *Culberson* sold to *Purnell* the interest acquired by him in the Louisiana property, from *Eliza Davis*.

On the 6th April, 1844, the interest of the minor heirs of *Mary Culberson* to the Forest plantation, amounting, as is expressed, to an undivided five-twelfths of the whole, was adjudicated to *Purnell* and as has been seen, this suit has been brought on four of the notes given for the price.

The error assigned is, that the ancestor of defendants, being the owner in indivision of three-fourths of the estate, in purchasing five-twelfths of it, purchased a part of what already belonged to him.

To ascertain the effect to be given to this defence, it is necessary to inquire what was the interest of *Thomas Purnell* in the property, at the time of the purchase.

*Levi Purnell*, having but two children at the time of his decease, had the right to dispose of one half of his property. C. C., 1480. This disposition, as has been seen, was made by him in express terms, in favor of his son *Thomas*. But

it is urged that it was made in error and under the belief that by the laws of Louisiana, he was the owner of only one-half of the property, and his wife, as partner in community, the other half; and that, from the context of the will, it may clearly be gathered that the intention of the testator was, that the property should be inherited by his two children equally. That the testator was in error in supposing that he was the owner of and had the power of disposing of only one-half of the property in Louisiana, is made clear by the delaration in his will. "I give," says he, "this property to my son *Thomas*, under the belief that my beloved wife will, at her death, give her undivided half of the same property to our daughter *Mary*." He likewise declares that the property in Louisiana is "held as community property, according to the laws of said State." If effect be given to this bequest, the title to one-half of the property in Louisiana vested in the legatee, upon the decease of the testator; and the surviving wife having died intestate, or even in case she were entitled to nothing, the remaining half being undisposed of descended in equal portions to the two children, by which *Thomas* would be entitled to three-fourths and *Mary* to the remaining fourth. Now, the spouses never having resided in Louisiana, and not having been married in Louisiana, and not having, at the time of their marriage, contemplated residing in Louisiana, the property purchased in this State, became the property of the husband and not of the husband and wife jointly. The declaration then, that one-half of the property belonged to his wife, was made in error and in ignorance of a material fact.

Under this erroneous belief, he devised one-half of the estate to his son, alleging as his reason for doing so his belief that his wife would give to the daughter the other half of the same estate, evidently intending thereby that the two should inherit equally.

The intention of the testator is his testament. This is the first rule, and all others which concern the interpretation of testaments are reduced to it. Domat, Part 11, B. 3, Tit. 1, sec. 6, Art. 5.

The same jurist in a paragraph 3178 (Cushing's edition) of the same book and title, in treating of the rules for interpreting difficulties in testaments, even when the terms of the disposition are unequivocal, states that some of them are occasioned by an error the testator was under in a matter of fact that was unknown to him, and when it appears clearly enough, by his dispositions what he would have ordered, if the truth which he was ignorant of had been known to him, and if his will be thus ascertained, that "we are to decide the matter, by adjusting the difficulty in the manner that we judge the testator himself would have done it, according to the views and sentiments which his disposition (and we may add, his declarations) show him to have had.

Being satisfied, therefore, that the intention of the testator was not to give preference to his son over his daughter, but on the contrary, that it was his desire that they might inherit equally, the property in Louisiana; and that the disposition in his favor resulted from ignorance of a material fact and in error, and would, if carried into effect, defeat his manifest intention, we cannot enforce it.

The children of *Levi Purnell* seem to have placed the same interpretation upon the will of their father which we give to it, and actually consented to carry it out, by the stipulations of the act of acceptance of the 27th May, 1841. It is true that they reserve their rights to attack any will which may be presented; but it further appears that *Purnell*, who alone had an interest in enforcing the

ARMORER
*v.*
CHASE

will, never presented it or claimed its execution; and that it was not until after his death, that the step-father of his children, to defeat a contract advisedly entered into and partially executed, saw proper to present the will and claim for the benefit of the children a strict enforcement of a disposition in favor of their father, which he himself had virtually waved.

*Thomas D. Purnell* was *sui juris* at the time of the partition of the slaves of the Forest plantation estate, and of the purchase of the interest of his sister's succession in the land. Although these acts may not come up to the technical definition of " acts recognitive and confirmatory," yet they clearly amount to a voluntary execution of the will of his father, according to the interpretation we have given it. As such, they are conclusive of his rights in the premises. C. C., 2252, 2254. Touillier, vol. 5, Nos. 175, 180.

Being of opinion that the arrangement entered into between the parties, carries out substantially the intention of the testator, we are unwilling to disturb it.

It is therefore adjuged and decreed that the judgment of the District Court be affirmed, with costs in both courts.