1 \ CARAWAY, Judge,
dissenting.
Since I find that Mrs. Justice never withdrew her testamentary intent expressed in favor of her husband and grandson in her 1978 will, I respectfully dissent from the majority’s ruling that a tacit revocation of her will resulted from her actions in 1990.
It is no accident that the Civil Code fails to list as a set and simple rule that the testator’s destruction of his will causes an automatic and absolute revocation. Instead, the code provides only the general rule that any such overt act implying revocation must nevertheless be investigated further for the testator’s “change of will.” La.C.C. art. 1691. Discussing the various acts by which a tacit revocation may occur, the early jurisprudence recognized:
“The compilers of our Code were careful to omit even the classification of these kinds of acts into erasure, laceration, suppression, destruction, etc. Those clashing commentaries, in which jurisconsults had invented the most subtle distinctions, were before them, and they therefore formulated a general rule, leaving to courts, of necessity, to apply it to each particular case that fell within its scope.”
Succession of Muh, 35 La.Ann. 394, 400 (1883).
The more recent rulings from Succession of Nunley, 69 So.2d 33 (La.1953) through *601 Succession of Talbot, 530 So.2d 1132 (La.1988), make clear that proof of a tacit revocation, by which the prior formal testamentary act is negated by an informal tacit act, entails more than the mere finding of the testator’s destruction of the will. Apart from the act of destruction, the testator’s intention not to withdraw the previously expressed testamentary intent can also be proven, and if proven, the presumption of revocation arising from the will’s destruction is nevertheless overcome.
Nunley articulated this view of the measurement of tacit revocations as follows:
IgThus, “any act [of the testator] which supposes a change of will, let that act be what it may, provided always the intention to revoke is fairly and legally deducible from it,” may result in a tacit revocation. Succession of Muh, supra, 35 La.Ann. at page 398. (Other citations omitted.) The eminent French authority, F. Laurent, observes that “The material fact of a tear or erasure is not sufficient; if the testator destroyed the will by accident, by imprudence, there would not be revocation, and the testament, even though tom, would remain valid.” F. Laurent, Principes de droit civil francais XIV (4e d. 1887) n~ 239, p. 263.
69 So.2d at 35 (Emphasis supplied).
Talbot’s message, when read carefully, affirmed that the testator’s act of destruction of the will regardless of how definitive it may appear is not the only test for revocation. The court said:
“... when the testator, in the presence of a credible witness, declares his intention to revoke his will and in fact destroys an original thereof, as in the present case, the presumption [that he intended to tacitly revoke] should not be rebuttable except upon clear proof of a contrary contention.” Id. at 1136. (Emphasis supplied)
Why did the court allow any exception? Why didn’t the undisputed proof of the testator’s conscious, destructive act in Talbot, like the proof in this case regarding Mrs. Justice’s removal and destruction of her will, foreclose any review of another motive for the testator’s act? How can the testator “declare” one intention and destroy the will yet really have a “contrary contention?”
Despite the majority’s emphasis on Mrs. Justice’s apparent destruction of her 1978 will under circumstances consistent with her having an aim to replace it with the 1990 instrument, I read Talbot and the jurisprudence to require the court from the further evidence available in this case to make a second essential inquiry into whether the alleged tacit revocation of the 1978 will was intended. Although Mrs. Justice likely committed the destructive act which itself can be viewed as an intentional act, was she also shown by a fair review of all other evidence concerning her intentions to have done so with an intention to revoke? This intention to revoke, itself a form of testamentary intent (albeit negative), is allowed lato be proven for this mode of revocation by any available extrinsic evidence and requires examination of the real motive, aim or reason for the act. Was Mrs. Justice’s misconceived act in 1990 a true “change of will” as required by Civil Code article 1691?
The dispositions of the 1978 will gave the community property in full ownership to Mr. Justice and divided the separate property equally between James and Jamie. By Mrs. Justice’s attempted will of 1990, the prior grants to her husband and grandson were not withdrawn but reaffirmed with Jamie’s legacy of one-half of her separate property actually increased. While the informal instrument cannot be a will nor an express revocation, her attempted grants to her husband and grandson which she had typed into the blanks in the mail-ordered will form reflect evidence of no “change of will” or withdrawal of her prior formally expressed intentions.[1]
Mrs. Justice’s close friend, Mrs. Gillum, in response to questions from the trial judge, confirmed that after 1990 until her friend’s death, Mrs. Justice continued to tell her that *602 she had willed half of her property to James and half to Jamie. Mrs. Gillum stated that “practically every time Jamie came up in the conversation, his grandmother told me that she was seeing to it that Jamie was taken care of.” In the face of the evidence of Mrs. Justice’s misplaced reliance upon her 1990 homemade act of nullity, the remedy of intestacy[2] which will destroy her consistent aim for her husband and grandson requires that this alleged tacit revocation be scrutinized more closely.
Lin this case, while I agree with the majority that it is clear that Mrs. Justice likely destroyed her 1978 will at the time of her ill-conceived 1990 actions, it is equally clear that she did not do so with the intention to cause her grandson to receive nothing and her estate to become intestate. Once the formality of the 1978 will was performed and the testamentary intent memorialized, that disposition, interpreted with her misguided 1990 actions, “must be understood in the sense in which it can have effect, rather than that in which it can have none.” La.C.C. art. 1713. This policy of our law in favor of testacy is surely paramount in measuring the informal and unwritten act or tacit revocation now urged to have produced intestacy.
The early case of Armorer v. Case, 9 La.Ann. 288 (1854), involved a will in which the testator’s error regarding a stated legacy appeared in other language explaining the bequest. The property which was the subject of the legacy was found by the court to have been the testator’s separate property although the will reflected the testator’s contrary belief. The legacy granted “this property to my son Thomas, under the belief that my beloved wife will, at her death, give her undivided half of the same property to our daughter, Mary.” Id. at 291.
On these facts the court held:
... The declaration then, that one-half of the property belonged to his wife, was made in error and in ignorance of a material fact.
Under this erroneous belief, he devised one-half of the estate to his son, alleging as his reason for doing so his belief that his wife would give to the daughter the other half of the same estate, evidently intending thereby that the two should inherit equally-
The intention of the testator is his testament. This is the first rule, and all others which concern the interpretation of testaments are reduced to it. Domat, Part 11, B. 3, Tit. 1, § 6, Art. 5.
The same jurist in a paragraph 3178 (Cushing’s edition) of the same book and title, in treating of the rules for interpret ing difficulties in testaments, even when the terms of the disposition are unequivocal, states that some of them are occasioned by an error the testator was under in a matter of fact that was unknown to him, and when it|5appears clearly enough, by his dispositions what he would have ordered, if the truth which he was ignorant of had been known to him, and if his will be thus ascertained, that we are to decide the matter, by adjusting the difficulty in a manner that we judge the testator himself would have done it, according to the views and sentiments which his disposition (and we may add, his declarations) show him to have had.
Being satisfied, therefore, that the intention of the testator was not to give preference to his son over his daughter, but on the contrary, that it was his desire that they might inherit equally, the property in Louisiana; and that the disposition in his favor resulted from ignorance of a material fact and in error, and would, if carried into effect, defeat his manifest intention, we cannot enforce it.
The testamentary intent was honored in Armorer by a reading of the entire testament despite the expressed intention, in a narrow sense, to grant the property only to the son. This measurement of testamentary intent would also apply to interpret an express revocation where the written intent to revoke a prior will might be clearly premised upon an erroneous conclusion of the testator found in other language in the act. Such an instru *603 ment would fail as a revocation because the written expressions of conflicting intent when viewed as a whole would reflect error and no clear intent to cause a change of will. If such written acts must be read fairly in the search for testamentary intent, the same must certainly be followed in the search for the testator’s change of will where the proof of a tacit revocation, neither written nor clothed in formality, is urged to destroy the prior formal act.
The act of tacit revocation by destruction of a will is an exception to the usual formal acts required to safeguard testamentary intent through the written execution of testaments and their revocations. La.C.C. art. 1692. In this setting, proof of the intent to withdraw the previously expressed testamentary intent which is embodied in a formal act is allowed by testimony and other informal documents along with the inference of revocation caused by the missing or destroyed will. If the intent to revoke, as in this case, is convincingly shown to have arisen through | 6error, no revocation has been proven, and the original formally expressed intent of the will should not be defeated.
In this case there is strong evidence indicating that Mrs. Justice must have intended to destroy her 1978 will. There is equally convincing evidence that she never withdrew her intent to dispose of her property in favor of her husband and grandson in the manner reflected in her 1978 will, so that her action in 1990 was prompted by error. As in Armorer, such error should not be allowed to destroy the clear expression of testamentary intent which was safeguarded by the proper formality which Mrs. Justice took in 1978.
For these reasons I dissent from the view of the majority and would reverse the judgment of the trial court.

. Whether Mrs. Justice’s action of 1990 amounted to a partial revocation of her legacy to James is not an issue presented. Nevertheless, the change in her intentions with respect to her disposition in favor of James was placed in doubt by the testimony of the close friend of Mrs. Justice.

. Mrs. Justice’s estate will now be inherited by her son under our law for intestacy with Mr. Justice’s legacy of the full ownership of her share ct the community property reduced to the legal usufruct and with her grandson’s inheritance eliminated entirely.