149 So. 504

### Succession of LOEWER.

### No. 31857.

July 7, 1933.

Walter G. Wedig, of New Orleans, for appellants Ernest, Gustave, and Alvin Buchholz.

Pomes & McCabe and John E. Unsworth, all of New Orleans, for appellee Louise Loewer.

O'NIELL, Chief Justice.

The only question in this case is whether a document purporting to be the holographic will of Miss Magdalena Loewer was really written by her. Her three cousins, Ernest, Gustav, and Alvin Buchholz, are named in the document as her universal legatees. They produced it and had it probated two months after the succession was opened. Miss Louise Loewer, who is the sister and only heir of the deceased, had the succession opened and was sent into possession as owner of the estate. She contended that the document purporting to be the will of her sister was a forgery. After hearing the evidence, the court decided that the document was a forgery. The three cousins of the deceased have appealed.

Two handwriting experts testified at the trial—one as a witness for the plaintiff and the other for the defendants. The expert testifying for the plaintiff gave the opinion that the contested document was a forgery,

and pointed out several discrepancies between the handwriting in contest and the specimens that were admitted to be the genuine handwriting of the deceased. The expert testifying for the defendants was of the opinion that the handwriting in contest was that of the deceased, and he pointed out several characteristics in her handwriting that appeared also in the handwriting in contest, which is very similar to that which is admitted to be genuine. But that is true in almost every case where forgery is charged, and particularly where the handwriting experts disagree. The similarity of handwriting in such cases does not prove absolutely that the contested handwriting is genuine, where, as in this case, a forger might have been aided by a specimen of the genuine handwriting.

Expert testimony is of no aid to the court where, there being two expert witnesses, they contradict each other, and one appears to be as competent and as worthy of belief as the other.

Three nonexpert witnesses for the defendants testified, as a matter of opinion said to be founded upon familiarity with the handwriting of the deceased, that the instrument in question was in her handwriting; but the fact is that these witnesses were judging merely from a comparison of the questioned handwriting with the admitted handwriting of the deceased, and not from an independent knowledge or recollection of her handwriting. One of these witnesses, who was one of the two witnesses on whose testimony the will was probated, admitted that the last instance where he had seen the handwriting of the deceased was in a very brief inscription on a post card, seven years before the time of his testifying; that the last time previous to that was in another brief inscription on a post card; and that the last time previous to that time, when he saw the handwriting of the deceased, was when he received a short letter of congratulation upon his marriage, about seventeen years before the time of his testifying. He admitted that the only other writings of the deceased that he had ever seen were brief statements on about half a dozen post cards that he had received from time to time, more than seventeen years before the time of his testifying; and he admitted that every such writing that he had received was destroyed soon afterwards. Another of the four nonexpert witnesses for the defendants, who was the other of the two witnesses on whose testimony the instrument in question was probated, admitted, frankly, on the trial of the case, that he could not identify the disputed handwriting as that of the deceased by an independent recollection of her handwriting, or without comparing the disputed handwriting with a known signature which he held in his hand; and all that he would say, as to whether the disputed handwriting was that of the deceased, was: "I would think so; I am not a handwriting expert, but there seems to be some similarity between that and this." Another of the four nonexpert witnesses for the defendants admitted that he did not know how the deceased spelled her name.

Two nonexpert witnesses for the plaintiff testified that the disputed handwriting was not that of the deceased. These witnesses were women who had worked beside the de-

ceased, one for twenty-five years and the other for twenty-eight years, making costumes for carnival organizations; and they claimed to know well, her handwriting. The plaintiff, who very likely knew her sister's handwriting better than any one else knew it, testified that the instrument in contest was not her sister's handwriting.

If the case depended entirely upon the testimony of the witnesses who undertook to identify the handwriting in dispute, against the testimony of those who denied the genuineness of the handwriting, the result would be a matter of much doubt. But there is some circumstantial evidence which, in a case already as doubtful as this is, justifies the conclusion that the handwriting in contest is not that of the deceased. In the first place, her name in the instrument, which contains only thirty-two words besides the date and signature, is written thus: "I Magdelena (Lena) Loewer," etc.; and the record is full of signatures showing—and proof of the fact—that the deceased never on any other occasion spelled her name "Magdelena" (with an e in the middle of it) but spelled it always "Magdalena" (with an a in the middle), or, familiarly, Lena. The instrument in contest is signed Lena Loewer—the name by which Miss Loewer was familiarly known, and with which she signed her personal letters, but with which she never signed a document of much importance.

The other circumstances which we deem important, in a case that would be otherwise very doubtful, are these: The only property owned by the deceased was her half interest, worth $3,325, in a house and lot which she and Miss Louise Loewer inherited

from their mother, and some homestead stock worth $1,300, and a deposit of $452.94 in bank; and the only heir to that meager fortune was Miss Louise Loewer, past middle age, alone in the world, and as poor as her sister was. They shared the inherited home, and were very affectionate towards each other to the last. The document purporting to be the will of the deceased contains no other provision except to say: "I give to my three cousins Earnest Gustav and Alvin Buchholz all my Real Estate and personal property to be equally divided." Ernest, Gustav, and Alvin Buchholz were men in their forties, and self-sustaining. It is said by some of the witnesses that Miss Magdalena Loewer lived in the home of Ernest, Gustav, and Alvin Buchholz and their mother; but the fact is that Miss Magdalena Loewer lived with her sister, and only went to the Buchholz home when called upon to nurse a sick member of the Buchholz family, or to do other work there that she was often called upon to do. She was very industrious, and very welcome, in the Buchholz home. There is where she was stricken with the fatal illness. It lasted only ten days. The document purporting to be her will is dated one month before her death, and is said to have been found at the Buchholz home two months and twenty days after she died there. The succession was opened. and Miss Louise Loewer was sent into possession of the estate, unconditionally, as the only heir of the deceased, on the seventeenth day after the death. The attorney for Miss Louise Loewer, before opening the succession, wrote a letter to Mrs. L. Buchholz, mother of Ernest, Gustav, and Alvin Buchholz, asking her whether the deceased had

left any papers, money, or personal effects, at the Buchholz home. There was no response to the letter. Thereafter the attorney for the appellants in this case made written demand upon Miss Louise Loewer and upon her attorney for three years' board and lodging of the deceased, at $60 per month, and threatened that Mrs. L. Buchholz would sue Miss Louise Loewer for the amount, $2,160, unless she would settle promptly. The attorney for Mrs. Buchholz stated in his letter that one of her sons was there representing her, in the attorney's office, while he was dictating the letter, and that the son said that Miss Magdalena Loewer had lived at his mother's house for thirty years or more. The attorney said, in his letter, that Mrs. Buchholz claimed that Miss Magdalena Loewer owed her for board and lodging for forty-three years, but that he (the attorney) conceded that she could collect only for the last three years. This demand was made exactly two weeks after the succession was opened. No suit was filed nor further demand made for the board and lodging. The next day after the demand was made, Miss Louise Loewer sent a neighbor to the Buchholz residence for some wearing apparel which the deceased had left there. Mrs. Buchholz requested the messenger to return at 9 o'clock next morning, when one of her sons would be home. The messenger returned at the appointed hour next morning, and was told then that there was nothing to be sent to Miss Louise Loewer. She and the messenger testified to these occurrences, and no attempt was made to contradict them. In fact, the occurrences were brought to light by the attorney for the

defendants in his cross-examination of Miss Louise Loewer. He asked her if she had sent a messenger to the Buchholz residence for her dead sister's belongings, after receiving the letter which he (the attorney) had written to Miss Louise Loewer; and she admitted the fact. Then he asked her if they found a will on that occasion, while they were picking out and examining the things that had belonged to Miss Magdalena Loewer. The witness, pointing to the messenger, who was waiting in court to be called as a witness, said: "There is the young man that went there." He testified afterwards, as a witness for Miss Louise Loewer, and was cross-examined by the attorney for the defendants, but no question was asked him or any other witness about the finding of a will. Two of the defendants, and the wife of one of the two, testified as witnesses in the case, but made no reference whatever to the finding of a will, or to the question whether the disputed handwriting was that of the deceased. One of the defendants did not testify, nor was their mother called as a witness. No reason is given or suggested as to why neither of these members of the Buchholz family testified in the case, nor as to why the three members of the family who did testify did not say anything about the handwriting of the deceased, or about the finding of the document purporting to be her will, or refer to the document at all. In the petition offering the document for probate it was alleged "that the said will was not found by petitioners herein until on the afternoon of May 30th"—two days before the petition was filed, and two months and three weeks after Miss Magdalena Loewer had died. It was incumbent upon the proponents of the al-

leged will to furnish an explanation as to how it happened that the document was found. Such an explanation is highly important in any case where an instrument purporting to be the will of a deceased person is said to be found after an extraordinary lapse of time, and is contested on the ground of forgery. In this case the duty to explain how, where, and by whom the instrument was found was accentuated by the fact that no one, as far as the record shows, ever knew or heard of Miss Magdalena Loewer's having made a will, or of her having expressed an intention to make a will. Her activities and acquaintances were so limited that she could hardly have confided in any one that she had made a will, or that she intended to make a will, without the proof thereof being available to the legatees after her death.

The judgment appealed from rests altogether upon a conclusion of fact, as to which we see no reason for taking issue with the judge who tried the case.

The judgment is affirmed.