PLOTKIN, Judge.
The opponent of an alleged olographic will appeals a trial court judgment maintaining the probate of the will, revoking the previous probate of a statutory will and codicil, and recognizing the decedent’s grandson as administrator of the estate. We affirm.
Pauline Menendez Salzer died on July 20, 1991, when she was 98 years old. On August 6, 1991, Ms. Anita Nuss, the appellant in this case, filed a petition to probate a statutory will executed by the decedent on August 22,1984 and a codicil to that will executed on March 14, 1986.[1] On August 19, 1991, the decedent’s grandson, Andre LaBorde, her only living descendant and the appellee in this case, filed an answer to Nuss’ petition to probate, asserting that the statutory will and codicil had been revoked by a handwritten olographic will dated May 10, 1986. The alleged olographic will, which was admitted into probate on August 19, 1991 by a Civil District Court judge other than the one hearing this case, stated as follows: “I Pauline Salzer revoke all wills by need me before this date May 10, 1986 [sic].” The document was signed “Pauline Salzer.” In connection with the probate of the olographic will, Mr. LaBorde filed a petition to be appointed administrator of his grandmother’s estate, which was ultimately signed by a third Civil District Court judge on August 23,1991. The clerk of court issued letters of administration to Mr. LaBorde on that date, o
Subsequently, Ms. Nuss sought to annul the probated olographic will and to set aside Mr. LaBorde’s appointment as administrator. The trial judge heard testimony in the case on January 2 and 3, 1992. The parties stipulated that the only issue at trial was whether the olographic will was “entirely written, dated and signed in the testator’s handwriting.”[2] After hearing testimony from Mr. LaBorde, as well as his father and his aunt, Catherine Hamilton, the trial court found that the olographic will did meet the requirements of La.C.C.P. art. 2883. Ms. Nuss appeals that finding.
La.C.C.P. art. 2883 provides, in pertinent part, as follows:
A. The olographic testament must be proved by the testimony of two credible witnesses that the testament was entirely written, dated, and signed in the testator’s handwriting. The court must satisfy itself, through interrogation or from the written affidavits or the depositions of the witnesses, that the handwriting and signature are those of the testator, and except as provided in Article *246 2890, must mention these facts in its proces verbal.
(Emphasis added.)
At trial, Herbert LaBorde, Andre La-Borde’s father, testified that he was familiar with the decedent’s handwriting because he had lived in the same house as the decedent during the thirteen years he was married to her daughter. He stated that he saw the decedent’s handwriting many times in the years after he moved to a different residence while visiting her. He was shown several samples, which he identified as Ms. Salzer's handwriting. He also stated that there was “no doubt in [his] mind” that the olographic will was written in the decedent’s hand.
Catherine Hamilton, Herbert LaBorde’s sister who raised Andre LaBorde, stated that she was familiar with Ms. Salzer’s handwriting because she had received cards and envelopes for Mr. LaBorde over the years which were signed by Ms. Salzer, especially envelopes containing savings bonds. She also identified several samples as the decedent’s handwriting, and stated that the “entire document,” referring to the olographic will, was written by Ms. Salzer.
William Farrell, a handwriting expert with 39 years experience as a questioned documents examiner both as a special agent for the FBI and in private practice, also testified. Mr. Farrell stated that he examined the olographic will and compared it to approximately nine samples of handwriting known to have been written by Ms. Salzer, including Ms. Salzer’s signature on the statutory will and the codicil, as well as her signature on a power of attorney. With regard to the olographic will, Mr. Farrell testified as follows:
Q. Based upon these known writing samples were you able to draw any conclusions as to whether or not Pauline Menendez Salzer signed her name to the questioned document P-1?
A. Yes. As a comparison with the known writing against the handwriting on the olographic will, P-1, I found such sufficient characteristics that were similar to state that I could identify the name Pauline Salzer in the test of the olo-graphic will as well as the signature Pauline Salzer on the bottom of the olographic will.
[[Image here]]
Q. Were you able to draw any conclusions about the remaining writings on the questioned olographic will which we have marked for identification purposes as P-1?
A. As I stated, for an examination we should have comparable letters and letter combinations. Those are handwriting characteristics to compare with questioned writings. However, in lieu of any known handwriting, that is comparable letter combinations, there's also other characteristics in the writings which you can draw from to give a leaning in the no conclusion aspect of your refinings. I found that the line quality of the writings, the shading, the speed of writings, these were all consistent with the Pauline Salzer and the rest of the writings and I feel that it’s more likely than not that the rest of this writing was written by Pauline Salzer.
Q. So you are saying it’s your testimony that the same person who signed Pauline Salzer at the bottom and wrote Pauline Salzer in the text also wrote the remainder of the body of this?
A. I’m not saying positively but I’m saying it’s more likely than not.
Q. And you are saying that based upon your forensic examination, scientific examination of the handwriting, its quality, shading, etc. is that correct?
A. That’s correct.
Trial transcript, Vol. I, pages 86-89.
Mr. LaBorde himself also testified, saying that he was familiar with his grandmother’s handwriting from receiving cards from her over the years, as well as from visits to her home as he got older and seeing things that she had written. He said that he saw Ms. Salzer write many times over the years and identified the writing on sample documents as having been written by her. He stated that Ms. Salzer handed him the olographic will when *247 he visited her one Sunday morning in May of 1986.
Under the provisions of La.C.C.P. art. 2883, Mr. LaBorde, as proponent of the olographic will, had the burden of proving through the testimony of two credible witnesses that the will was entirely written, dated, and signed by his grandmother. The jurisprudence interpreting this provision has held that the phrase “credible witness” includes individuals who are familiar with the testator’s handwriting, as well as handwriting experts. In re Succession of Jones, 356 So.2d 80, 82 (La.App. 1st Cir.1978). Thus, all four of the witnesses presented at trial qualify as “credible witnesses” for purposes of proving the validity of the olographic will.
Ms. Nuss contests the trial court judgment on the basis of excerpts from the transcript which she says impeached the testimony of Mr. LaBorde’s witnesses, making them incredible.[3] Although the transcript does reveal some inconsistencies between testimony given in deposition and testimony given at trial by the three La-Borde lay witnesses, those inconsistencies are not so egregious as to make the witnesses incredible as a matter of law. Essentially, the trial court’s judgment in this case is based on his evaluation of the credibility of the witnesses. A trial court judgment based on credibility can virtually never be manifestly erroneous and thus it is not subject to reversal on appeal. Rosell v. ESCO, 549 So.2d 840, 845 (La.1989).
Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are to be taxed to the appellant.
AFFIRMED.

. Both the statutory will and the codicil, which was also in statutory form, contained provisions disinheriting Ms. Salzer’s grandson, Andre La-Borde.

. On appeal, the appellants also argue that the olographic will is invalid because Mr. LaBorde failed to prove that he had reconciled with his grandmother after she expressly disinherited him in her statutory will and codicil, as required by La.C.C. art. 1624. However, the provisions of La.C.C. art. 1624 apply only if the will by which the descendant is disinherited is valid. In this case, the trial court found that the olo-graphic will, which expressly revokes the statutory will containing the disinheritance, was valid. Thus, Mr. LaBorde was not required to prove a reconciliation. Additionally, the stipulation that the only issue in the trial was the validity of the olographic will was clearly stated by the parties at the beginning of the trial. In oral argument, the appellant cites Succession of Harte, 143 So.2d 291 (La.App. 4th Cir.1962) for the proposition that the relationship between the parties has been considered in determining the validity of a will. However, the Harte case is easily distinguishable from the instant case. In Harte the court considered that the story of the proponent of the olographic will was totally incredible, and the tenor of the relationship between the parties is mentioned only in passing; it was obviously not significant to the court’s decision. Thus, the Harte case has no bearing on the case at hand. Accordingly, we pretermit any discussion of the disinheritance.

. Ms. Nuss also claims in oral argument that the witnesses were not “competent” because their testimony indicated that they were not sufficiently familiar with the decedent’s handwriting to testify. In support of this argument, Ms. Nuss cites Succession of Loewer, 177 La. 869, 149 So. 504 (La.1933). However, in Loewer the fact that one of the proponent’s lay witnesses had little familiarity with the decedent’s handwriting was only one of many factors considered in affirming a trial court judgment declaring an alleged olographic will a forgery. It does not require us to reverse the trial court judgment in this case.