OVERTON, J.
 

 Miss Maud O’Brien, a retired s.chool teacher, died at her domicile in New Orleans on December 7, 1927. Twenty days after her death, II. C. O’Brien, a nephew of the deceased, addressed a petition to the civil district of the parish of Orleans, alleging that the deceased died intestate. lie also alleged that there was in the possession of Clement Barthe certain documents which purported to be wills of the deceased, but which were null and void, because not clothed with the forms prescribed by law. He alleged that he, his brothers and sisters, are the legal heirs of the deceased, and prayed that the wills in the possession of Barthe be declared null, and that.he be appointed administrator of the succession of the deceased.
 

 On the following day William L. Sirjaeques and James C. Henriques presented for probate a copy of what purports to be the last will and testament of the deceased, in olographic form, alleging that the original could not be produced, because it was either lost or destroyed by some person other than the deceased, and prayed that the will be probated, and that letters testamentary issue to them.
 

 By this will, which is dated June 4, 1925, the deceased bequeathed to her legal heirs one
 
 *306
 
 dollar each, left legacies to various friends, and appointed two testamentary executors. By a codicil, dated February 24,1927, the testatrix reaffirmed all the provisions of the foregoing will, with the exception that in place of the executors therein named she appointed as executors W. L. Sirjaeques and James O. Henriques.
 

 Both petitions were disposed of in the trial court together. The evidence clearly shows that the copy of the will, attached to the petition for probate, is a true copy of the original. The evidence also abundantly shows that the original was entirely dated, written, and signed by the testatrix. It also shows that the original, some ten days before the death of the testatrix, was placed by her in the keeping of Clement Barthe, who was a neighbor of the deceased. The evidence further shows that on the day the will was delivered to Barthe, Mrs. Barthe, who was present when the will was delivered to her husband, made a copy of it on a typewriter, which is the copy attached to the petition for probate. The evidence also shows that, on the morning of the day the testatrix died, at which time she was, at least, in a semidelirious condition, she sent for the will, and that Mrs. Barthe brought it to her. The testatrix did not attempt to read the will, but, it is said, suggested some changes she wanted made in it. Mrs. Barthe, at the request of the testatrix, rewrote the will, making the changes suggested, on a typewriter, and delivered the typewritten one, as well as the olographic one to the testatrix, who was lying in bed in a dying condition. No one seems to have seen anything of either the typewritten or the olographic will thereafter. On the following morning, the nurse and the others, acting by direction of the undertaker, burned, because of their condition, the mattress and the bedclothing, used by the testatrix during her last illness. The evidence indicates that the olographic will and the typewritten one, which latter does not appear even to have been signed by the testatrix, were burned, probably' inadvertently, with the mattress and b'edclothing. It does not appear what the contents of the typewritten will were, but that is a matter of no importance here, for no one contends that it was a valid will, and besides the testatrix was not, at the time it was written, sufficiently in possession of her faculties to have written a will, to say nothing of defects in the confection of this particular one.
 

 From the foregoing it is apirarent that the testatrix was neither capable of writing a will nor destroying one with the intention of canceling it on the day of her death. The record in this case leaves no room for the presumption that a will shown to have been in possession of the testatrix, and not found after her death, is presumed to have been destroyed by her with the intention of canceling it. Here the testatrix, from the time the olographic will was last seen in her possession up to the time of her death, which was a few hours later, was incapable of entertaining an intention to cancel or destroy. Moreover, the record makes it reasonably certain that the olographic will was destroyed with the bedding on the morning after the death of the deceased. The testament was a perfectly valid one in olographic form, and we think remained the will of the testatrix up to the time of her death. There is no reason why it should not be probated and executed, simply because, under the cirpumstances, it cannot be produced. The will of a testator should not be permitted to be defeated in any such manner. Succession of Clark, 11 La. Ann. 124; Gaines v. Hennen, 24 How. 553, 16 L. Ed. 770.
 

 The district judge reached the same conclusion that we have.
 

 For the reason assigned, the judgment appealed from is affirmed.