*254
 
 FOURNET, Chief Justice,
 

 This appeal from a judgment of the district court admitting to probate the last will of Lula W. Nunley, deceased, and a sufo sequent judgment recognizing Annie Lee White and Jasper White, her niece and nephew (children of a brother, Frank White), as the only legatees of decedent and placing them in possession of her estate, is prosecuted by the remaining presumptive heirs of Lula W. Nunley (children of her two deceased brothers and one deceased sister), who were named parties defendant in the suit by Annie Lee White offering the document for probate, seeking to be confirmed as testamentary executrix and to be declared, along with her brother, Jasper White, sole legatees under the will. When the case was previously before us, a motion to dismiss the appeal was denied and the appellants were allowed a period of 30 days to cause citation of appeal to be served on Jasper White. See 222 La. 730, 63 So.2d 737.
 

 Lula W. Nunley died on May 19, 1949, leaving neither ascendants nor descendants; her estate, after payment of debts, amounted to $2,449.02. During her lifetime she resided at Homer, Louisiana, and on May 4, 1945, called at the office of her attorney to ask his aid in preparing her will, telling him of the disposition she desired to make of her property. He thereupon dictated to his secretary a form of will in accordance with the decedent’s wishes, gave the typewritten sheet to her and instructed her to copy it verbatim; and return it to.him later for inspection. ■ A duplicate of the transcription was retained in the attorney’s files. Lula Nunley brought back a will-written in long hand, identical in its terms as to words .and figures, including the signature, of the form prepared for her; this was examined by the attorney, approved,, then returned. By its provisions (according to the duplicate) she left all she possessed to her niece and nephew, Annie L. and Jasper White, and appointed the former her executrix. Later in the same year, on separate occasions, she showed the will to two close friends who were visiting in her home, telling them that it was her will and permitting them to read it.
 

 During. 1949 the decedent was observed searching her house for the document, stating that she had lost it and couldn’t find it; and about a month before her death she went on two occasions to the office of her attorney for the purpose of having a new will prepared, but was unsuccessful as he was absent at the time of her visits.
 

 The appellants, conceding that under the jurisprudence of this Court lost wills have been admitted to probate, state that in all instances the wills were lost after the death of the testator; and contend that a will lost before the death of the testator cannot be probated because the decedent “left no will”' and the succession is therefore intestate, according to the provisions of Article 1096 of the LSA-Civil Code.
 

 
 *256
 
 Under the laws of this State, a will maybe revoked by act of the testator either expressly (in which event the revocation must be in one of the forms prescribed for testaments, and clothed with the same formalities) or tacitly, resulting from some other disposition of the testator (as indicated by subsequent incompatible testamentary dispositions, or the sale or donation inter vivos of the subject of the legacy) or from some act which supposes a change of will. LSA-Civil Code, Articles 1691-1695. The French Civil Code, in similar provisions (Articles 1035 and 1038) limits tacit revocation to a subsequent incompatible testament or voluntary alienation of the subject of the legacy; and in neither body of law is mention made of destruction of the will as an evidence of revocation. However, the jurisprudence of both countries recognizes that a will may be revoked by mutilation, erasure, obliteration, tearing or burning of the testament by the testator or upon his instructions. See Succession of Hill, 47 La.Ann. 329, 16 So. 819; Succession of Muh, 35 La.Ann. 394, 48 Am.Rep. 242, and numerous pertinent French authorities there cited; also, Ripert and Boulanger’s Traité élémentaire de droit civil de Planiol III (4e éd. 1951) n° 2077; ibid, n° 2086-2088, p. 665; Colin et Capitant, Cours élémentaire de droit civil frangais III (10e éd. 1950, par de La Morandiére) n° 1903, p. 972; Planiol et Ripert, Traité pratique de droit civil frangais V (1933) n° 714, p. 765. Thus, “any act [of the testator] which supposes a change of will, let that act be what it may, provided always the intention to revoke is fairly and legally deducible from it,” may result in a tacit revocation. Succession of Muh, supra, 35 La.Ann. at page 398; see, also, Succession of Hill, supra; Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; Succession of Cunningham, 142 La. 701, 77 So. 506. The eminent French authority, F. Laurent, observes that “The material fact of a tear or erasure is not sufficient; if the testator destroyed the will by accident, by imprudence, there would not be revocation, and the testament, even though torn, would remain valid.” F. Laurent, Principes de droit civil frangais XIV (4a éd. 1887) n° 239, p. 263. In the same sense, see Ripert et Boulanger’s Planiol, op. cit. supra, III, n° 2087, p. 665; Colin et Capitant, op. cit. supra, n° 1903 (c), p. 973.
 

 The fact that an olographic will, shown to have been in the possession of or accessible to the deceased, cannot be found at his death, gives rise to a legal presumption of revocation by destruction; however, this presumption is a rebuttable one, according to accepted principles adhered to not only in this State and in France, but under the common law as well. See Fuentes v. Gaines, 25 La.Ann. 85; cf. Succession of O’Brien, 168 La. 303, 121 So. 874; Ripert et Boulanger’s Traité élémentaire de droit civil de Planiol, op. cit. supra, III, nos 2087, 2088, p. 665; annotation in 34 A.L.R. at page 1304 et seq.; 3 A.L.R.2d 949, at page 952 et seq. The onus of rebutting this pre
 
 *258
 
 sumption is cast upon those seeking to establish the will, by clear proof (1) that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) of the fact that the will, though it could not be found at the testator’s death after diligent search, was never revoked by him.
 

 In the instant case, the proponents of the will have sustained this burden with convincing and uncontradicted proof. Confection of a valid olographic will, identical in content in all respects with the copy retained in the attorney’s files, is attested to by the attorney himself (engaged in the practice of law for some 28 years), and is not seriously disputed; the record contains further proof that the testatrix had the will in her home, where various people saw it and read it; that she spoke to others of having made a will in which she left everything to her niece and nephew, the appellees. There is testimony to the effect that in March or April before her death (on May 19) she searched her house and told her boarder that she was looking for her will, which she could not find; that about a month before her death, she went to the attorney’s office, telling his secretary she wished to see Mr. Meadors about getting a copy of the will she had made, and stating to her that she had lost the one she had prepared, whereupon the decedent was told that the attorney was away, to go back home and look again for the will, and to return in about a week if she could not find it. She did return, but again failed to see Mr. Meadors. Shortly afterward she became ill, was taken to Charity Hospital in Shreveport, and Annie L. White was summoned from- California. The latter remained with her aunt at the hospital until her death two weeks later, and though the decedent was conscious during most of the time, she did not mention having lost the will but assured Annie White that everything she had would -be hers and her brother’s.
 

 For the reasons assigned, the judgment appealed from is affirmed.