HALL, Judge.
This is an appeal by the Public Administrator for the Parish of Orleans from a judgment of the District Court “ordering the probate of the olographic will made by the decedent, Mrs. Ruby L. Franks, on the 16th of January, 1960 * * * which olographic will has been lost or mislaid.”
A brief statement of the pleadings is helpful to an understanding of the case.
On August 14, 1963 Mrs. Charles Sourthese filed a petition through the law firm of Polack, Rosenberg, Gex & Ritten-berg praying that a notary public be appointed to search for the will of the decedent, Mrs. Ruby L. Holms, widow of Ernest Aaron Franks, alleging that the decedent died on or about August 12, 1963 and alleging on information and belief that the decedent had left a will naming petitioner as a legatee. Pursuant thereto the Court appointed Robert G. Polack, Notary, to make a search for the will.
On August 19, 1963 the notary filed a Return reading in part as follows:
“I further certify that as a result of said search, I located a copy of a will of said decedent, dated January 16, 1960, in the possession of Austin Anderson, Esquire, an attorney who represented decedent not only in connection with the preparation of her said will but also in other matters, which copy I attach hereto and make part hereof; that, as a result of said search, and said inquiries, I have satisfied myself that the original of said will is, in fact, in existence and has been placed in a location of security by the decedent not as yet discovered.”
*179 On the same date Austin Anderson, represented by Richard A. Dowling and Robert G. Polack, Esquires, petitioned the Court to probate the will of decedent as a lost will, the contents of which were represented by the copy thereof attached to and made part of the Notary’s Return.
After hearing evidence from many witnesses, the District Judge probated the will.
On August 21, 1963 the Public Administrator for the Parish of Orleans filed a petition to annul the probate, alleging that the “piece of paper * * * admitted to probate is * * * a nullity under the laws of Louisiana” because it is not entirely written, dated and signed by the testator and does not comply with the requirements of any form of will authorized by law. The Public Administrator further alleged on information and belief that the decedent left no heirs present or represented in the State, and for this reason prayed that the probate be annulled and that he be appointed Administrator of decedent’s estate as provided by law.
The proponents of the will filed exceptions of no cause nor right of action to the petition of the Public Administrator, which the Court overruled. Thereafter answers were filed and in due course the matter was tried on the merits, resulting in a judgment as previously indicated. The Public Administrator appealed.
The Supreme Court in Succession of Nunley, 224 La. 251, 69 So.2d 33, held that the fact that an olographic will, shown to have been in the possession of or accessible to the deceased, cannot be found at his death, gives rise to a legal presumption of revocation by destruction, but that this presumption is a rebuttable one. The Court further held:
“ * * * The onus of rebutting this presumption is cast upon those seeking to establish the will, by clear proof (1) that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) of the fact that the will, though it could not be found at the testator’s death after diligent search, was never revoked by him.” •
See also: Succession of O’Brien, 168 La. 303, 121 So. 874.
Each case must of course be decided according to its own particular facts.
The record reveals that the decedent who lived alone at 8016 Weber Street in the city of New Orleans near the community called Little Woods died some time in August 1963. When her body was found by the coroner it was lying on the floor of the cottage and indications were that she had been dead for several days. Mr. Polack, the notary, who conducted the search for decedent’s will testified that when he arrived at the house he found the front door locked but the side door “wide open”. He further testified that the house was in a shambles, and seemed as if it had been ransacked. Clothes and old letters, Christmas cards, receipts and other bits of paper were scattered everywhere, some on top of the kitchen table “that would normally be used for cooking.” The notary searched the premises on two different occasions but not only did not find a will but could not find several other important documents which the deceased is known to have had. Upon being informed that Mr. Austin Anderson had been decedent’s attorney at one time and had assisted her in making a will, Mr. Polack contacted him with the result that Mr. Anderson produced from his files a typewritten copy of a form of will which he had prepared for decedent’s use.
The typewritten copy is dated “New Orleans, Louisiana, January 16, 1960” and reads in part as follows:
“ * * * I leave all my property to St. Luke Church at Rocheblave and Onzaga Streets. I appoint Austin Anderson, 1031 Maison Blanche Bldg., N. O. La. to be the testamentary executor of my estate without bond.”
*180 The name “Mrs. Ruby L. Franks” is typed at the bottom of the document.
Since he was named in the copy as testamentary executor of decedent’s estate Mr. Anderson filed a petition for the probate of the will as a lost or misplaced document, and produced the typewritten copy as evidence of its contents.
On the trial of the Public Administrator’s suit to declare the will a nullity Mr. Anderson testified that he had a distinct recollection of the confection of the will. He testified that decedent called at his office on January 16, 1960 for the purpose of signing a compromise agreement with a Mrs. Huff which he had prepared for signature. He produced a duplicate original of this agreement which is dated Jan. 16, 1960 and bears the signatures of both the decedent and Mrs. Huff. Mr. Anderson further testified that after executing the compromise agreement the decedent told him that she wished to make her will leaving everything to St. Luke’s Lutheran Church and that he then dictated and caused to be typed a form of will embodying her wishes which he handed to decedent and escorted her into an adjoining office, which was unoccupied, gave her writing materials and told her to copy the form in her own handwriting; that she went into the adjoining office, closed the door, and later returned to his office with the written will and the typewritten form; that he checked what she had written against the form he had given her and satisfied himself that it corresponded to the form as to date and signature and in every other respect, and that it was entirely written, dated and signed in decedent’s own handwriting. He then delivered the handwritten will to her and she left the office with it in her possession. He preserved the form in his files as was his custom. Mr. Anderson never saw the handwritten will again and in fact never saw the decedent after the year 1960.
Mrs. Bernice Cox, Mr. Anderson’s secretary, now retired, corroborated Mr. Anderson’s testimony in all important details. She testified that she was told by both the decedent and Mr. Anderson that decedent was going to make her will; she saw Mr. Anderson escort the decedent to the unoccupied office; she saw decedent close the door; and some time later saw her emerge with the will and the form in her hands; that she saw the handwritten will and conducted decedent back into Mr. Anderson’s office so that it might be checked.
There is no doubt in our minds that decedent actually made a valid olographic will, and that the copy produced from Mr. Anderson’s files corresponds to the will in every particular as to date, signature and contents. As a matter of fact, counsel for appellant conceded this in his argument before this Court.
Appellant contends however that the proof adduced on behalf of the proponents of the will is insufficient to overcome the legal presumption that decedent revoked the will by destroying it.
In order to overcome the presumption of revocation the proponents called as witnesses the Rev. Roy C. Timaeus, pastor of St. Luke’s Church, and several of decedent’s closest friends all of whom testified that decedent often spoke to them of leaving some money to St. Luke’s Church. The decedent had been a member of this church for some years and had no known living relatives. Her husband had predeceased her.
Reverend Timaeus testified that the last time he had a distinct recollection of talking to decedent was in December 1962, about nine months before her death. At that time she stated to him that she was going to leave the church some money.
Mrs. Charles Sourthese testified that she had known decedent for 25 years; that they were very close friends and visited each other frequently; that decedent often spoke about willing something to St. Luke’s Church; that she last saw decedent just two weeks before her death and that on that occasion decedent repeated that “I’m going *181 to leave the church something * * * I like that church and I’m going to leave the •church.”
Mrs. Elise Garidel testified that she had known decedent about IS years; that she last saw her about a month before her •death. Mrs. Garidel further testified:
“On this particular occasion in the beginning of July I was ribbing her about hurrying. She said I’m going to be the cause of her death. She said ‘You know it goes to the church.’ She •died in August. I think it was the thirteenth.”
Mrs. Garidel testified that she herself had been a Roman Catholic all of her life and had no interest whatever in the Lutheran Church.
Mrs. Cora Vosbinder testified that she had known decedent about 12 years; that decedent “always told me she wanted to leave everything to the church,” meaning St. Luke’s Evangelical Lutheran Church. Mrs. Vosbinder further testified that she was at decedent’s home about three weeks before she died, and that on that occasion decedent declared “I am going to leave everything I have to my church.”
The witnesses testified that decedent never during their acquaintanceship mentioned leaving anything to anyone except St. Luke’s Church, and there is nothing in the record which would indicate that decedent ever changed her mind. It cannot be supposed that decedent would destroy her will in favor of the church so that her property would escheat to the State.
In his “Reasons for Judgment” the District Judge remarked: “The Court was impressed with the testimony of all of the witnesses. In short every witness told the truth.”
Considering the testimony of the witnesses especially in conjunction with the fact that decedent’s home had apparently been ransacked after her death and that all of her important papers were missing, we are of the opinion that the presumption that decedent destroyed her will of January 16, 1960 with the intention of revoking it has been overcome.
The Court is fully cognizant of the seriousness of the doctrine which creates the legal presumption that the will was revoked by destruction. We want to make it amply clear that the conclusion we have reached in the instant case is based upon the exceptional facts presented in the record before us and should not be construed as opening the door to the probate of lost olographic wills except where the requirements enunciated by the Supreme Court in Succession of Nunley, supra, are clearly met by the proof of facts necessary to overcome this presumption in each specific case.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.