356 So.2d 80 (1978)
In re Succession of Voladia JONES, Deceased.
No. 11750.
Court of Appeal of Louisiana, First Circuit.
February 13, 1978.
Rehearing Denied March 20, 1978.
Writ Refused May 5, 1978.
*81 Phil Breaux of Bride & Breaux, St. Gabriel, for appellant-defendant, Margaret Jones Ellison.
James Dore of Dupont, Edwards & Dore, Plaquemine, for appellees-defendants in Rule, Voladia Earl Jones and Susan Ann Jones.
William O. Templet of Middleton & Templet, Plaquemine, for appellee-plaintiff in Rule, Citizens Bank and Trust Co.
James L. Dendy of Dendy, Davis & Hyde, Baton Rouge, for appellee-defendant in Rule, Voladia D. Jones.
Gail Marie Jones, Sunshine, for appellee-defendant in Rule, Gail Marie Jones.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Voladia D. Jones (Appellant) appeals from judgment ordering probate of a photo copy of an olographic will left by his deceased father, Voladia Jones (Decedent). The trial court rejected Appellant's contention that the olographic will was revoked in that the original was destroyed by Appellant in compliance with Decedent's expressed wish and desire. We affirm.
The issues presented are: (1) Is the will valid as to form; (2) If valid as to form, was the will legally revoked; and (3) If valid and unrevoked, may the testament be probated notwithstanding destruction of the original subsequent to testator's demise.
On October 26, 1971, Decedent executed a valid statutory will. The testament bequeathed decedent's estate, (inventoried at $305,674.47), excepting Decedent's cattle, to Decedent's daughter Margaret Jones Ellison and Appellant, in proportion of 5/8 to Mrs. Ellison and 3/8 to Appellant. All Decedent's cattle were left to Appellant.
Decedent died July 19, 1976. The statutory will was duly probated on October 28, 1976, and Citizens Bank & Trust Company, Plaquemine, Louisiana (Executor), was qualified as Testamentary Executor pursuant to the terms of the instrument. Thereafter, Executor presented to the court a photo or xerox copy of an olographic will purportedly written by Decedent under date of November 15, 1972. This latter testament bequeaths Appellant a large tract of land, some horses and all of Decedent's cattle except 15 head left to Decedent's grandson Voladia Earl Jones. It also left Decedent's granddaughters Gail and Susan Jones two horses each. Susan Jones was also bequeathed $6,000.00 cash. Decedent's daughter Maggie Jones Ellison was left $100,000.00 cash. The remainder of Decedent's land, if any, was left to Susan and Gail Jones.
Executor then impleaded all heirs and legatees in a petition for declaratory judgment in which Executor prayed that validity of the olographic will be determined.
Appellant and his wife testified in substance that about four or five months prior to his death, Decedent called Appellant to Decedent's home and handed Appellant the olographic will and gave Appellant instructions to keep the instrument. Later, Decedent summoned Appellant and told Appellant to destroy the testament because Decedent did not want to use it. Still later, Decedent inquired whether Appellant had *82 destroyed the document. On this occasion, Appellant replied that he had not yet destroyed the will but would do so. Appellant did not, however, destroy the will during Decedent's lifetime. Appellant learned of the statutory will after the death of his father. Appellant admits he did not destroy the olographic will on learning about the statutory testament because he did not then know the contents of the statutory will and felt that if he destroyed the olographic testament "it might hurt him". Appellant then contacted the attorney representing the Executor and presented the attorney with the olographic will. The attorney made a photo or xerox copy of the original olographic will and returned the original to Appellant. Appellant's testimony is clear that after ascertaining that the olographic instrument was adverse to his interest, he destroyed the document. The trial court admitted the copy to probate.

VALIDITY OF THE OLOGRAPHIC WILL
Appellant contends the will is invalid in that it is undated. He concedes, however, that the body of the will and the signature thereon are in the handwriting of Decedent. The attorney for the Executor, W. B. Middleton, Jr., a respected member of the local bar, testified that the olographic will presented to him bore the date "Nov. 15, 1972", but that when he duplicated the testament, only part of the date appeared on the copy. He then, in his own handwriting, added the date "Nov. 15, 1972" to the copy at the same place where the date appeared on the original. He also stated he compared the writing and signature to numerous samples of Decedent's writing available to him, and that the document was entirely written, dated and signed in Decedent's handwriting.
Appellant's wife testified she saw the olographic will while it was in Appellant's possession. She believed the original was dated. She also stated the entire instrument, date and all, was in Decedent's handwriting.
Appellant's testimony concerning a date on the will is in substance that he does not recall seeing a date on the instrument.
We find no merit in Appellant's contention that the will was not dated and that it was not proven by the testimony of two credible witnesses as required by La.C.C. Article 1588 and La.C.C.P. Article 2883. Appellant, who was familiar with Decedent's handwriting, verified that all of the will, excepting the date, was in Decedent's handwriting. Appellant's wife, also familiar with Decedent's handwriting, attested that the entire will, including date, was in the handwriting of testator. Mr. Middleton, who has no interest in this matter, although not a handwriting expert, compared the will to numerous known specimens of Decedent's handwriting and concluded the will was entirely written, dated and signed by Decedent's own hand.
Proof that an alleged olographic will was entirely written, dated and signed in the testator's handwriting is not limited to handwriting experts. A credible individual familiar with decedent's handwriting is competent to serve as a credible witness pursuant to La.C.C.P. Article 2833. Succession of Lirette, 5 So.2d 197 (La.App. 1st Cir. 1941).

WAS THE OLOGRAPHIC WILL REVOKED
Revocation of testaments is governed by La.C.C. Article 1691, which pertinently states:
"The revocation of testaments by the act of the testator is express or tacit, general or particular.
It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition.
It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will.
It is general when all the dispositions of a testament are revoked.
It is particular when it falls on some of the dispositions only, without touching the rest."
*83 Although the above codal authority does not specify that destruction of a will by testator constitutes a testamentary revocation, our jurisprudence recognizes that such action is the most effective means of revoking a will. Smith v. Shaw, 221 La. 896, 60 So.2d 865 (1952), and authorities cited therein.
Mere intent to revoke a will does not per se effect revocation. Such intent must be implemented either by a method of revocation authorized by Article 1691, above, or intentional destruction of the instrument. Smith v. Shaw, above; Succession of Hill, 47 La.Ann. 329, 16 So. 819 (1895); otherwise testator's intent to adhere to the will is presumed.
We deem it elementary that each question of this nature must be decided in the light of its own peculiar facts and circumstances.
In Succession of Hill, above, testatrix discarded a will by throwing it away in the trash. The testament was retrieved and given to testatrix who stated she had revoked the will. She added that she did not want the document and wished it destroyed. Nevertheless, the will was kept in testatrix's home with papers considered of insignificant value. During the remainder of her life, testatrix stated on several occasions that she had made a will but revoked it. Prior to her death, she obtained a will form with the intent to make out a new will but did not do so. In holding that the will had not been revoked, the court, in Succession of Hill, above, observed that such acts and declarations do not revoke a testament pursuant to Article 1691, above. The court also noted that when the discarded will was presented to testatrix she did not destroy it.
We find that Smith v. Shaw, above, relied on by Appellant, is factually inapposite. In that case, the will was destroyed in that it was torn and shredded by testatrix's attorney at testatrix's suggestion and in her presence.
In this instance, the only evidence of testator's intent to revoke comes from Appellant who admittedly did not destroy the will until after Decedent's death, and only then after the witness determined that destruction of the testament was in his own best interest. Decedent himself did not destroy the will during his lifetime, notwithstanding his inquiry of Appellant which elicited the response that the will had not yet been destroyed as Decedent requested. We concur in the trial court's finding that Appellant has failed to establish revocation of the olographic will as required by the law and jurisprudence.

MAY A COPY OF A WILL BE PROBATED
Our jurisprudence is to the effect that when an original will has been destroyed, a copy may be admitted to probate, provided the copy is shown to be an exact copy of a testament valid as to form. Succession of O'Brien, 168 La. 303, 121 So. 874 (1929); Jones v. Mason, 234 La. 116, 99 So.2d 46 (1958). Jones v. Mason, above, concerned a carbon copy of a will valid as to form. The original could not be found. The court held there was only one will, of which duplicate originals existed. Succession of O'Brien, above, involved a typewritten copy of an olographic will shown to have been valid as to form and execution by decedent. The copy was admitted to probate on a showing that the original had probably been destroyed along with the bedding on decedent's bed which was burned, following decedent's death, because of its condition.
We are here concerned with a photo copy of an olographic will valid as to form and execution. Revocation of the instrument pursuant to our law and jurisprudence has not been established. It is presumed that testator's intent to make the olographic will his last will and testament continued until the moment of death. The copy was properly admitted to probate.
The judgment is affirmed at Appellant's cost.
Affirmed.