769 So.2d 1267 (2000)
In the Matter of The SUCCESSION OF Elizabeth Ashley CLAIBORNE.
No. 99 CA 2415.
Court of Appeal of Louisiana, First Circuit.
November 3, 2000.
Charlton B. Ogden, III, John J. Zvonek, Edward R. McGowan, New Orleans, for Appellant Leon J. Gibert, Jr.
Douglas M. Chapoton, Stacey Moak, Baton Rouge, for Appellant Fred W. Evans.
James E. Toups, Jr., Baton Rouge, for Appellee Clifford Donovan Hyatt, II.
James C. Dewey, New Roads, for Appellee Walter H. Claiborne, III.
Michael O. Hesse, St. Francisville, for Appellees Walter Claiborne, IV and Barbara Claiborne.
Before: WHIPPLE and FOGG, JJ., and BAGNERIS,[1] J. Pro Tem.
*1268 FOGG, J.
This is an appeal from a judgment admitting to probate a photocopy of a will dated November 30, 1995 and recalling the probate of a will executed in 1992. For the following reasons, we affirm.
Elizabeth Ashley Claiborne (hereinafter referred to as "Ms. Claiborne") died on December 7, 1996. On May 19, 1997, her will dated December 20, 1992 was probated in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, State of Louisiana. Shortly thereafter, Walter H. Claiborne, III (hereinafter referred to as "Mr. Claiborne"), the brother of the decedent and her sole collateral heir, was appointed provisional administrator. In the 1992 will, the decedent made particular legacies to Fred Evans and Gloria Ford, and named Leon J. Gibert, Jr. as universal legatee.
On August 13, 1997, Clifford Donovan Hyatt, II, the alleged son of the decedent, filed a petition to annul the probate of the 1992 testament, asserting that the will was not signed and dated by the decedent.
Thereafter, Mr. Claiborne intervened in the will contest on January 20, 1998, asserting claims similar to Mr. Hyatt's, as well as asserting the testatrix's lack of capacity to create the 1992 will. On June 19, 1998, Mr. Claiborne filed a motion in accordance with LSA-C.C.P. art. 2853, asserting that he had discovered three photocopies of a 1995 olographic will of the decedent. The 1995 will revoked all prior wills and named Mr. Claiborne's children, Walter H. Claiborne, IV and Barbara E. Claiborne, as well as Gloria Ford, as legatees. Thereafter, on February 23, 1999, Mr. Claiborne filed a motion to probate a photocopy of the 1995 will.
A trial on Mr. Hyatt's petition to annul the probate of the 1992 will, Mr. Claiborne's petition of intervention to annul the probate of the 1992 will, and Mr. Claiborne's motion to probate the photocopy of the 1995 will was held on March 5, 1999. On April 14, 1999, the trial judge rendered judgment recalling the probate of the 1992 will and probating the 1995 will.
Mr. Gibert and Mr. Evans appeal that judgment, contending the trial court erred in finding Mr. Claiborne adequately rebutted at trial the presumption set forth in Succession of Talbot, 530 So.2d 1132 (La. 1988), that a missing will is revoked by destruction.
In Succession of Talbot, 530 So.2d at 1134-1135, the Louisiana Supreme Court held that when a will, shown to have been in the possession of or accessible to the deceased, cannot be found at the testator's death a presumption arises that the testator has destroyed the will with intent to revoke it. The party seeking to establish the will may rebut the presumption by clear proof of the following: (1) the testator made a valid will; (2) proof of the contents or substance of the will; and (3) the will, though not found at testator's death, was never revoked by the testator. Succession of Nunley, 224 La. 251, 69 So.2d 33 (1953). To prevail the proponent of a will bears the burden of establishing that the testator did not intend to revoke the will by destroying it. Succession of Talbot, 530 So.2d at 1135.
Mr. Claiborne presented to the court for probate a photocopy of a 1995 will he found in a desk drawer at Ashley Plantation, a home that he and his sister coowned, but where neither resided. Because the record does not disclose what became of the original 1995 will, it is presumed that Ms. Claiborne destroyed it.
The trial court found that the copy of the 1995 will met the first two requirements of Succession of Talbot by providing proof that a valid will was executed by Ms. *1269 Claiborne and proof of the contents of that will; these findings are undisputed on appeal. At issue is the third requirement of Succession of Talbot. That is, did Mr. Claiborne show, by clear proof, that Ms. Claiborne did not revoke the will?
Any act of the testator that indicates a change of will would constitute a tacit revocation provided the intent to revoke is "fairly and legally" evident from such act. Succession of Nunley, 224 La. at 255-56, 69 So.2d at 35. However, the same level of proof is not used in every case when determining whether the testator intended to revoke a will. The supreme court in Succession of Talbot recognized a sliding scale of proof sufficient to rebut the presumption depending on the weakness or strength of the evidence surrounding the lost original. Succession of Altazan, 96-0409 (La.App. 1 Cir. 11/8/96), 682 So.2d 1320.
The record reflects that upon the death of her father in 1979, Ms. Claiborne began residing with and caring for her mother at Ashley Plantation in Point Coupee Parish. Upon the death of their mother in 1989, Mr. Claiborne and Ms. Claiborne inherited several pieces of immovable property, including Ashley Plantation. Ms. Claiborne continued to reside there until she met Mr. Gibert and began residing with him in 1992. Although they did not marry, Ms. Claiborne resided with Mr. Gibert until her death. During that time, she frequently spent weekends at horse shows or at Ashley Plantation without Mr. Gibert.
In 1992, Ms. Claiborne was diagnosed with cancer. Late that year, her illness appeared to be in remission, and Ms. Claiborne continued to pursue her hobby, raising and riding cutting horses. During 1993, she left her long-time horse trainer, Fred Evans, and placed her horses with another trainer. The testimony is consistent that they remained friends after she removed her horses from Mr. Evans' care; however, their contact with each other was diminished. Then, in June of 1996, she was diagnosed with a recurrence of her illness, which led to her demise in December of that year.
Mr. Claiborne testified that, between 1990 and 1993, Ms. Claiborne left him a note stating that she intended to leave her property to his children. After that, on two occasions, once shortly before her death in November of 1996, she told him she intended to leave her estate to his children. Mr. Claiborne's son testified that she also discussed this intention with him.
Ms. Claiborne executed a will on November 30, 1995, just one year prior to her death, revoking all other wills. It is clear that, at that time, the intent she expressed in the 1992 will had changed and she intended to leave her estate to her niece, her nephew, and Gloria Ford.
The record is silent as to the present location of the original 1995 will. However, Ms. Claiborne continually had access to the copies of the 1995 will and could easily have destroyed them if she intended to revoke that testament. In the years prior to her death, she went to Ashley Plantation once or twice a month. The desk that contained the copies was centrally located in a family room and always accessible. She saw her brother at least monthly to handle management of their co-owned properties and also communicated with him by telephone and through notes left for him at Ashley Plantation.
After thorough review and careful consideration of the record, we cannot say that the trial court erred in finding that Mr. Claiborne met his burden of clearly proving that the 1995 will was never revoked by Ms. Claiborne. For these reasons, we find no error in the trial court's decision to admit to probate the 1995 will.
Accordingly, the judgment of the trial court is affirmed. Costs are assessed *1270 equally to appellants, Leon J. Gibert, Jr. and Fred W. Evans.
AFFIRMED.
NOTES
[1] Judge Michael G. Bagneris is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.