STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-426


SUCCESSION OF BETTY DEVILLE SHARP GARLINGTON


**********


APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 10432-A
HONORABLE JOHN J. LARRY VIDRINE, DISTRICT JUDGE


**********


GLENN B. GREMILLION
JUDGE


**********


Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion,
Judges.


REVERSED.

Guy O. Mitchell, III
225 Court Street
Ville Platte, LA 70586-4492
(337) 363-0400
Counsel for Defendants/Appellees:
    Hazel West Deville
    Betty Deville Sharp Garlington
    Anne Jean Ballard
    Charles Don Deville
    Patsy Deville Cloud

Richard W. Vidrine
P. O. Box 2022
Ville Platte, LA 70586
(337) 363-0353
Counsel for Appellant:
    David Garlington

GREMILLION, Judge.

The defendant, David Garlington, appeals the trial court's judgment finding that a subsequent testament by the decedent, Betty Deville Sharp Garlington, revoked a prior 1991 testament which was written in his favor. For the following reasons, we reverse and remand for further proceedings.

**FACTS**

Betty Deville Sharp Garlington died on July 6, 2003, and was survived by her husband, David, her mother, Hazel West Deville, and her siblings, Anne Jean Ballard, Charles Don Deville, and Patsy Deville Cloud. A Petition to Open Succession and Search for Will was filed by her mother and siblings. The petition acknowledged the existence of a September 30, 1980 and a September 21, 1982 testament and alleged that another testament may have been executed by the decedent. It further requested that Hazel be appointed administratrix of her succession. An order appointing Hazel administratrix and ordering the search for any wills executed by the decedent was issued by the trial court.

Thereafter, Hazel filed a rule to show cause alleging that an April 3, 1991 testament was located and that she and her son were both informed by David that a later testament had been executed by the decedent, which he refused to produce. Following a hearing on the rule to show cause, the trial court found that a testament was executed by the decedent subsequent to the three known testaments and ordered its production by David or his attorney. David then filed a motion for a new trial; Hazel filed a rule to show cause seeking to have the succession declared an intestate succession. Following a hearing, the trial court denied his motion for a new

1

trial as being untimely and ruled that the decedent's succession was an intestate succession. This suspensive appeal by David followed.

## ISSUES

On appeal, David argues that the trial court erred in finding that his motion for new trial was untimely. He further argues that the trial court erred in finding that the decedent revoked her April 3, 1991 testament and that her succession was an intestate succession.

## MOTION FOR NEW TRIAL

In his first assignment of error, David argues that the trial court erred in finding that his motion for new trial was submitted untimely. We agree.

Louisiana Code of Civil Procedure Article 1974 provides that the delay for applying for a new trial "shall be seven days, exclusive of legal holidays. The delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913." Likewise, we held in *Goodman v. Roberts*, 549 So.2d 897, 898-99 (La.App. 3 Cir. 1989):

> Thus, one has seven days exclusive of legal holidays after judgment is signed within which to file a motion for a new trial. The delay period does not include legal holidays in accordance with La.C.C.P. art. 5059 as they are expressly excluded by the article. La.R.S. 1.55 provides in pertinent part that Saturdays and Sundays as well as enumerated holidays shall be considered as legal holidays for purposes of computation of time under La.C.C.P. art. 5059. Therefore, in counting the seven day delay period, Saturdays and Sundays are legal holidays and are not counted. *Wiley v. Wiley*, 459 So.2d 105 (La.App. 2nd Cir.1984); *National American Bank of New Orleans v. Purvis*, 407 So.2d 753 (La.App. 1st Cir.1981).

> The judgment in this matter was signed on September 16, 1987. This date fell on a Wednesday. The seven day delay period commenced

2

to run on September 17, 1987.  Pursuant to La.C.C.P. art. 5059 and the Louisiana jurisprudence, Saturday the nineteenth and Sunday the twentieth are excluded.  Therefore, the seventh day would have been September 24, 1987, which was well within the seven day delay period.

Notice of judgment was mailed to the parties by the clerk of court on February 24, 2005.  Thus, the seven-day delay for applying for a new trial commenced on February 25, 2005, which was a Friday, and ended on March 7, 2005, a Monday, as Saturday, February 26; Sunday, February 27; Saturday, March 5, and Sunday, March 6 were legal holidays.  As David's motion was received by the clerk of court on March 7, 2005, it was timely.  Accordingly, the trial court erred in finding that the motion was submitted outside the time delays provided by Article 1974.

## REVOKED TESTAMENT

In his final assignments of error, David argues that the trial court erred in finding that Betty executed a subsequent testament which revoked her three prior existing testaments.  He further argues that the trial court erred in finding that Betty's succession was intestate.

In *Succession of Claiborne*, 99-2415, p. 3 (La.App. 1 Cir. 11/3/00), 769 So.2d 1267, 1268, *writs denied*, 00-3283, 00-3310 (La. 2/16/01), 786 So.2d 98, 99, the court stated:

> In *Succession of Talbot*, 530 So.2d at 1134-1135 [La.1988], the Louisiana Supreme Court held that when a will, shown to have been in the possession of or accessible to the deceased, cannot be found at the testator's death a presumption arises that the testator has destroyed the will with intent to revoke it.  The party seeking to establish the will may rebut the presumption by clear proof of the following:  (1) the testator made a valid will; (2) proof of the contents or substance of the will; and (3) the will, though not found at testator's death, was never revoked by the testator.  *Succession of Nunley*, 224 La. 251, 69 So.2d 35 (1953).  To prevail the proponent of a will bears the burden of establishing that the testator did not intend to revoke the will by destroying it.  *Succession of*

3

*Talbot*, 530 So.2d at 1135.

In its reasons for judgment, the trial court stated:

It is a fact that at the December 20, 2004 hearing this Court after listening to the testimony of the parties, found that Betty Deville Sharp Garlington had in fact executed another Will thereby revoking the Testament which had been executed by her on April 3, 1991. This Court was convinced that said new testament was based on Mrs. Garlington's love and affection which she had for her niece, Tabatha Cloud. There is ample evidence even as Betty Deville Sharp Garlington lay in the hospital in her dying hours she was concerned about a Will wherein she had made bequests to niece (sic). Although this Will has never been located it is the opinion of this Court that it existed and by its existence at the time of her death it revoked all prior Wills and Codicils. Since it has been lost or destroyed it is the opinion of this Court that Betty Deville Sharp Garlington's Estate is an Intestate Succession that should be divided or probated in accordance with the operation of Louisiana law relative to Intestate successions.

After reviewing the record, we find that the trial court erred in rendering judgment in favor of Hazel. Although the trial court held that Betty executed a subsequent testament, there is no evidence in the record to substantiate whether that testament was valid, as the transcript of the December 20, 2004 hearing is not in the record. Without clear proof of the testament's validity, Hazel cannot rebut the presumption that Betty revoked the missing testament.

Moreover, the manner in which a testament may be revoked is provided for by La.Civ.Code art. 1607, which describes three ways in which a testator may revoke a testament: "(1) Physically destroys the testament or, has it destroyed at his direction; (2) So declares in one of the forms prescribed for testaments or in an authentic act; and (3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting." In this instance, Hazel alleges that the revocation of the three known testaments occurred via

4

the second manner: "So declares in one of the forms prescribed for testaments or in an authentic act." However, without the actual document in hand, once again there is no proof that it was a valid testament. Accordingly, we find that the trial court erred in finding that the decedent's succession was intestate.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is reversed and the matter is remanded for further proceedings in accordance with this opinion. The costs of this appeal are assessed to the plaintiff-appellee, Hazel West Deville.

**REVERSED.**