# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-37

**SUCCESSION OF JEFFERY JOSEPH DESHOTEL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 47,149
HONORABLE R. RICHARD BRYANT, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Van Clifton Seneca**
**Attorney at Law**
**P. O. Box 3747**
**Lake Charles, LA 70602-3747**
**(337) 439-1233**
**Counsel for Appellees:**
**Eula Mae Deshotel**
**James Russell Deshotel**

**Ginger Vidrine**
**Attorney at Law**
**631 Kirby St.**
**Lake Charles, LA 70601**
**(337) 310-0161**
**Counsel for Appellants:**
**Vicki Neeley**
**Jeffrey Scott Deshotel**

**SAUNDERS, Judge.**

This is a succession case dealing with two competing wills. After the first will was probated, a second will was brought forth. In the first will, the decedent left no property to one of his sons and that son's wife. This was inconsistent with the several wills the decedent had made over his lifetime. In the second will, executed just prior to the interdiction proceedings of the decedent, he did leave property and assets to that same son and wife, as he had done in every other will in the record.

The trial court found the second will valid and, as such, it revoked the first will and invalidated the judgment of possession Jefferey Scott Deshotel and Vicki Neeley had received based on the revoked, first will. The appellants raise four assignments of error. We find no merit in any of the assignments of error raised, and affirm the trial court's findings and judgment.

**FACTS AND PROCEDURAL HISTORY:**

This case involves two testaments by Jeffery Joseph Deshotel ("the decedent"). One is dated in April of 2005. The other, is dated in November of 2005.

The decedent was the father of three children, James Russell Deshotel, Vicki Neeley, and Jeffery Scott Deshotel. James Russell Deshotel is married to Eula Mae Deshotel, while the marital status and/or spouses of the other two children is not relevant to these proceedings.

The decedent made his living operating commercial establishments, including a number of bars in Calcasieu Parish. The decedent had a close relationship with Eula Mae Deshotel, as Eula Mae helped the decedent with maintenance work and collecting rent on the properties he owned.

The decedent made a series of wills, five of which are in the record. Each will, with one exception, provided for James Russell and Eula Mae Deshotel to inherit

from him.

The decedent was suffering from dementia and Alzheimer's disease in March of 2005 when he executed a will leaving $125,000 to Jefferey Scott Deshotel, $75,000 to Vicki Neeley, and bequeathed the remainder of his property to James Russell Deshotel. Shortly thereafter, the decedent became angry with the James Russell and Eula Mae Deshotal and made the April will at issue wherein he did not leave anything to either of them. The next month, the decedent reconciled with the appellees.

On August 8, 2005, the appellants instituted interdiction proceedings against the decedent. Before the hearing on the interdiction, the decedent executed the November will wherein he did allow for the appellees to inherit from him. After executing the November will, the decedent regularly would tell people that he loved the appellees and wanted them to inherit from him.

In May of 2006, the decedent was placed under a limited interdiction. Initially, James Russell Deshotel and Vicki Neeley agreed to serve as co-curators, but Vicki assumed control over the decedent's property. When the relationship between Vicki and James Russell became disharmonious, Vicki was appointed the sole curator over the decedent's property and papers.

On January 7, 2008, the decedent died at the age of eighty-six. A petition to probate his April will was filed on January 14, 2008. A judgment of possession recognizing Vicki Lynn Neeley and Jeffrey Scott Deshotel (collectively "the appellants") as the children and legatees of the decedent, and sending them into possession of his property was issued.

James Russell and Eula Mae Deshotel (collectively "the appellees") each filed

a petition to nullify the April will, to set aside the judgment of possession, and to order probate of the will dated November 16, 2005. Further, they requested injunctive relief and an accounting. The November will submitted by them was a duplicate original that was held by the law office that had executed the will for the decedent.

On October 27, 2008, these matters were heard by the trial court. It ruled that the judgment of possession and order of probate previously executed and filed on January 14, 2008, were null. The trial court further ordered and declared the November will valid and ordered a judgment of possession and order of probate according to its provisions. Finally, the trial court granted the injunctive relief and accounting requested by the appellees.

The appellants filed this appeal. In their appeal they raised the following four assignments of error:

**ASSIGNMENTS OF ERROR:**

1. The trial court erred as a matter of law by annulling the judgment of possession without finding that the will that had been probated was invalid.

2. The trial court erred as a matter of law by annulling the judgment of possession and recognizing the will urged by the appellees when a copy of the will was presented and the original could not be found and a presumption exists that the will urged was destroyed with the intent to revoke which arises when the original will cannot be found.

3. The trial court erred as a matter of law by annulling the judgment of possession and recognizing the will urged by the appellees when that will was executed at a time when an interdiction proceeding had been filed against the testator and when the proposed interdict/testator lacked testamentary capacity.

4. The trial court erred as a matter of law by annulling the judgment of possession and recognizing the will urged by the appellees when that will was executed at a time when the testator was subject to undue influence and skillful manipulation by the movers.

**ASSIGNMENT OF ERROR NUMBER ONE:**

The appellants allege in their first assignment of error that the trial court erred

as a matter of law by annulling the judgment of possession obtained from probating the April will without first finding that the April will that had been probated was invalid. This allegation is without merit.

Louisiana Civil Code Article 1607 provides as follows:

> Revocation of an entire testament occurs when the testator does any of the following:
>
> (1) Physically destroys the testament, or has it destroyed at his direction.
>
> (2) So declares in one of the forms prescribed for testaments or in an authentic act.
>
> (3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.

The appellants contend that the trial court's statement that it did not find the April will invalid necessarily means that the appellees failed to carry their burden of proof required of them under La.Code Civ.P. art. 2932.[1] The appellants claim that in order to annul the judgment of possession obtained pursuant to the April will, the trial court must find that the April will was invalid.

To bolster their position, the appellants cite *Succession of Lirette*, 5 So.2d 197 (La.App. 1 Cir. 1941). In brief, the appellants assert that the *Lirette* case stands for the proposition that "where a will has been probated as required by law, the probating of the will makes 'prima facie proof' of the will's genuineness[,] and if the will is

---

[1] Louisiana Code of Civil Procedure Article 2932 states:

> A. The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law.
>
> B. In an action to annul a notarial testament, a nuncupative testament by public act, or a statutory testament, however, the plaintiff always has the burden of proving the invalidity of the testament.

thereafter attacked, the burden of proof rest [sic] on the opponent to prove its invalidity." While this proposition may be true, it is also true that the appellees do not need to prove that the April will was invalid to nullify the judgment of possession obtained via the April will if they are able to show that the November will was also valid, and in it, the decedent revoked his April will under La.Civ. Code art. 1607(2).

The November will put forth by the appellees reads, in pertinent part, as follows:

> BE IT KNOWN, that I, **JEFFERY JOSEPH DESHOTEL**[,] being of sound and disposing mind and a resident of Calcasieu Parish, State of Louisiana, do make and declare this to be my Last Will and Testament, hereby revoking all former wills and codicils that have been made by me, to wit.

It is clear from our reading of the November will that the decedent revoked all prior wills, including the April will that had been probated. The trial court merely had to find the November will valid, which it did, and that, by function of the November will, revoked the April will. After finding the November will valid, it was not incumbent upon the trial court to determine whether the April will was valid, as the validation of the November will revoked the April will and annulled any judgment of possession based upon the probate of that April will. La.Civ. Code art. 1607(2).

Accordingly, we find that this assignment of error raised by the appellants is without merit. In the remaining assignments of error, the appellants contest the trial court's finding regarding the validity of the November will. Thus, whether the trial court's determination that the November will was valid was proper will be addressed in the following assignments.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In their second assignment of error the appellants contend that the trial court

erred as a matter of law by recognizing the November will urged by the appellees when a copy of that will was presented and the original could not be found. We do not agree with this contention.

The appellants argue that the trial court erred when it did not recognize that the appellees failed to rebut the presumption that the decedent destroyed the November will with the intent to revoke it. The appellants contend that this presumption arises under *Succession of Talbot*, 530 So.2d 1132 (La.1988) and *Succession of Nunley*, 69 So.2d 33 (La.1953), when the proponent of a will cannot produce the original of that will. The appellants contend that because the trial court did not hold the appellees to the appropriate standard, any validation of the November will was in error.

The appellants' recitation of the law is not complete. In *Succession of Nunley*, our supreme stated, "The fact that an olographic will, *shown to have been in the possession of or accessible to the deceased*, cannot be found at his death, gives rise to a legal presumption of revocation by destruction." *Id*. 69 So.2d at 35 (emphasis added). Likewise, in *Succession of Talbot*, our supreme court stated, "this court has adopted the uniformly adhered to rule that the failure to find a will which was duly executed *and in the possession of, or readily accessible to, the testator*, gives rise to a legal presumption of revocation by destruction." *Succession of Talbot*. 530 So.2d at 1134-35 (emphasis added).

Thus, it is clear under both cases that in order to have this presumption apply, the record must indicate that the decedent had the November will in his possession or that it was readily accessible to him prior to his death. Here, there is only evidence that appellant, Vicki Neeley, was in possession of all the decedent's papers prior to his death as his curator, not that the decedent kept the original of the November will

6

in his possession. Moreover, there is no evidence that any of the decedent's papers, inclusive of the November will, were readily accessible to him once Vicki Neeley took possession of them.

Furthermore, even should the appellants be able to show that the decedent had the November will in his possession or that it was readily available to him, the presumption is rebuttable, and the evidence in the record is such that this presumption is rebutted.

> The onus of rebutting this presumption is cast upon those seeking to establish the will, by clear proof (1) that the testator made a valid will, (2) proof of the contents or substance of the will, and (3) of the fact that the will, though it could not be found at the testator's death after diligent search, was never revoked by him.

*Succession of Nunley*, 69 So.2d at 35.

In the case before us, the trial court found that the November will was valid. The appellants raise questions regarding the testamentary capacity of the decedent that we address in assignments of error numbers three and four. In those we find no error in the trial court's finding that the decedent did have testamentary capacity when he executed the November will drawn up by attorney Benjamin Mount. Thus, the appellees have satisfied the first requirement to rebut the presumption.

The November will produced by the appellees is a duplicate original kept by the law firm that had done this will for the decedent. The duplicate original is clear in its contents as well as its substance. Thus, the second requirement to rebut the presumption is also met.

Finally, there is no evidence in the record that the November will was ever revoked. To the contrary, there is an abundance of evidence that the decedent wanted the appellees to inherit from him. Attorney Steve Streete, a personal friend of the

7

decedent for thirty-two years, testified that the decedent was close to the appellees, especially Eula, and that, after the November will, the decedent had never been estranged from the appellees, nor had he ever voiced any interest in disinheriting either of them. These sentiments were echoed by Mr. Melvin Bourque, a close friend of the decedent who had known him from 1957 to the time of his death. Mr. Bourque testified that the decedent wanted the appellees to inherit from him.

Moreover, appellant, Jeffrey Scott Deshotel, testified to the following:

Q  And you have no evidence to indicate that your daddy ever wanted to revoke his November 2005 will, do you?

A  No.

Further, Grace Manuel, the decedent's sitter, testified to the following:

Q  Did [the decedent] tell you that - - did he talk to you about Ula [sic] or Russell inheriting from him?

A  Yes, sir.

Q  And what did he say?

A  He said that he would like for them to have the property and everything.

Q  He said he'd like for them to have his house?

A  Yeah.

Q  And his commercial bars?

A  Uh-huh (yes), everything.

Q  And - - and during those times [when he was lucid], did he - - was he familiar with where he was and who he was and who his family members were?

Q  Yes, sir.

Accordingly, given the lack of evidence in the record that the decedent had the November will in his possession and the lack of evidence that the November will was

accessible to him, we find the trial court correctly chose not to apply the presumption that the decedent destroyed the November will with the intent to revoke it. Moreover, it is clear that whether the trial court applied the presumption is not determinative, as the evidence in the record establishes that such a presumption would have been rebutted by the appellees.

**ASSIGNMENT OF ERROR NUMBER THREE:**

The appellants assert that the trial court erred as a matter of law by annulling the judgment of possession and recognizing the November will urged by the appellees when that will was executed at a time when an interdiction proceeding had been filed against the decedent and when the proposed interdict/decedent lacked testamentary capacity. This assertion is remiss.

"An appellate court may not set aside a trial court's finding of fact absent manifest error or unless it is clearly wrong." *Succession of Moss*, 00-62, p. 3 (La.App. 3 Cir. 6/21/00), 769 So.2d 614, 617, *writ denied*, 00-2834 (La. 12/8/00), 776 So.2d 462 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "[T]he question of testamentary capacity is a question of fact." *Succession of Ellis*, 486 So.2d 260, 262 (La.App. 3 Cir. 1986).

Louisiana Civil Code Article 396 states, "[a] judgment of interdiction has effect retroactive to the date of the filing of the petition for interdiction." Louisiana Civil Code Article 1482(C) states the following:

> A limited interdict, with respect to property under the authority of the curator, lacks capacity to make or revoke a donation *inter vivos* and is presumed to lack capacity to make or revoke a disposition *mortis causa*. With respect to his other property, the limited interdict is presumed to have capacity to make or revoke a donation *inter vivos* or disposition *mortis causa*. These presumptions may be rebutted by a preponderance of the evidence.

In the case before us, a petition for interdiction was filed on August 8, 2005. During the pendency of the petition, the decedent executed the November will. The decedent then stipulated to a limited interdiction. His interdiction was limited to his finances and medical decisions, but not as to his person. Thus, under La.Civ.Code arts. 396 and 1482(C), the decedent was presumed to lack testamentary capacity in financial and medical decisions, but that presumption was rebuttable by a preponderance of the evidence.

The trial court found that the evidence was such that the decedent did have testamentary capacity when he executed the November will. Given the standard of review, the appellants must show that the trial court's finding that the decedent had testamentary capacity was manifestly erroneous or clearly wrong.

After reviewing the record, we find ample evidence to support the trial court's finding that the decedent had testamentary capacity to make the November will. Benjamin Mount, the attorney who prepared the November will, testified to the following (emphasis added):

Q      [O]n the day that you signed his will, you have no doubt that if [the decedent] was suffering from dementia that he was lucid at that time?

A      I've done hundreds of wills, and I would not have executed a will with a person if he was not of sound mind and I did not have an opinion that he knew what he was doing, and I would not have executed a will, and *I have no doubt in my mind that Jeff Deshotel on this occasion knew what he was doing.* He gave me specific ideas of what he wanted to do with his property, and I carried it out.

Dr. Garrett B. Ryder, a board certified adult and geriatric psychiatrist, saw the decedent in February of 2006, after the November will was executed. He testified to the following:

Q When you saw [the decedent], he was able to understand his relationships with his children. Is that fair enough?

A Yes. Clearly he understood it.

Q And the reason you say clearly understood is because he discussed those relationships with you; is that correct?

A Yes. And was consistent in those discussions.

Q And why don't you expound a little bit on that and tell us why you are saying that.

A Well, he was able to talk with me and give names and dates and amount - - not dates[,] but locations and specifics, without the kinds of errors that oftentimes you see with people who don't typically meet the definition of competency. So he was able to keep all that straight in his head even in discussing it with me - -

Q Okay.

A - - during the period of time we were talking. So I like - - when I see [sic] evaluate somebody for that, I like to keep bringing them back around and testing their consistency of responses, so that is what I mean by the consistency.

Q So when you saw him he was lucid. Is that a fair statement?

A Yes.

While Dr. Ryder's testimony does not necessarily prove that the decedent was lucid on the date he executed the November will, it does prove that the decedent did have moments of lucidity several months after he executed the will. Given the nature of the decedent's afflictions, dementia and Alzheimer's disease, as they progressively get worse, it is reasonable to conclude from Dr. Ryder's testimony that the decedent was capable of having moments of lucidity when he executed the November will. This conclusion is corroborated by the following testimony of Grace Manuel:

Q And there were times during even the last six months of his life when he was lucid and able to communicate and talk about his family and his properties?

11

A      Sometimes.

Additionally, the finding that the decedent was capable of moments of lucidity in November of 2005 is supported by the testimony of the appellants. Appellant, Jeffery Scott Deshotel, testified to the following:

Q      Now, you recall telling me in your deposition that sometimes your daddy would be confused and sometimes he would be clear in his thinking?

A      Yes.

Q      And you certainly were not with him whenever he met with Ben Mount, were you?

A      No, sir.

Q      And so you're certainly not in a position to sit here today and say that your daddy wasn't clear in his thinking when he met with Ben Mount, was he?

A      No, I couldn't say that.

Appellant, Vicki Neeley, even admitted that in November of 2005 the decedent had some days where he was lucid in the following excerpt of her testimony:

Q      All right. Now, let's jump ahead over a year to his state of mind around November 2005 when he executed one of the wills in question here today. What was his state of mind like around November of 2005?

A      Very forgetful.

Q      All right.

A      He had some days where he was fine and some days he wasn't fine.

Given the testimony of Dr. Ryder, Grace Manuel, and the appellants, that the decedent had moments of lucidity, coupled with the testimony of Mr. Mount that the decedent was lucid on the day he executed the November will, we find no error in the trial court's conclusion that the decedent was lucid on the date he executed the

12

November will. As such, we find this assignment of error raised by the appellants is without merit.

**ASSIGNMENT OF ERROR NUMBER FOUR:**

In their final assignment, the appellants contend that the trial court erred as a matter of law by annulling the judgment of possession and recognizing the November will urged by the appellees when that will was executed at a time when the decedent was subject to undue influence and skillful manipulation by the appellees. This contention is deficient.

Whether a testator is subject to undue influence is a finding of fact and subject to the manifest error standard of review. *Succession of Lounsberry*, 01-1664 (La.App. 3 Cir. 5/8/02), 824 So.2d 409, *writ denied*, 02-2000 (La. 10/25/02), 827 So.2d 1163. Louisiana Civil Code Article 1479 states:

> A donation *inter vivos* or *mortis causa* shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.

Louisiana Civil Code Article 1483 establishes what burden of proof the appellants must have shown at the trial level in order to prevail in establishing undue influence; it reads:

> A person who challenges a donation because of fraud, duress, or undue influence, must prove it by clear and convincing evidence. However, if, at the time the donation was made or the testament executed, a relationship of confidence existed between the donor and the wrongdoer and the wrongdoer was not then related to the donor by affinity, consanguinity or adoption, the person who challenges the donation need only prove the fraud, duress, or undue influence by a preponderance of the evidence.

Thus, in order for the appellants to succeed on this issue before us, they must show that it was unreasonable for the trial court to have found that they did not

13

produce clear and convincing evidence that the decedent was unduly influenced by the appellees. After a thorough review of the record, we find no evidence that either appellee skillfully manipulated the decedent.

The overwhelming evidence is that the decedent always had a closer relationship with the appellees than he did with the appellants. Moreover, the decedent had a penchant for making wills, and the only will in which he left nothing to the appellees was the April will previously probated by the appellants. In every other will in the record, the decedent left his assets in the same manner as he did in the November will, with the appellees inheriting from him.

The appellants only argue that Eula Mae unduly influenced the decedent, not James Russell; however, in undisputed testimony in the record, Eula Mae Deshotel testified that she did not meet with Benjamin Mount when he executed the November will. She did not ride with the decedent to Mr. Mount's office that day. The decedent did not tell Eula Mae why he was going to Mr. Mount's office, and she did not know that the decedent had executed the November will.

Accordingly, we find that there is no basis for this assignment of error. The trial court's decision is supported by the record, and, thus, is not manifestly erroneous or clearly wrong.

**CONCLUSION:**

The appellants raised four assignments of error. The first dealt with whether the trial court, by law, must have determined the April will was invalid prior to annulling the judgment of possession the appellant had obtained based upon that April will. The final three dealt with whether the trial court properly found the November will to be valid. We found no merit in any of the assignments. Therefore,

14

we affirm the trial court's judgment. All costs of this proceeding are assessed to the appellants.

**AFFIRMED**.