868 So.2d 36 (2003)
In the Matter of SUCCESSION OF Rudolph Holmes HATCHELL.
No. 2003 CA 0163.
Court of Appeal of Louisiana, First Circuit.
November 7, 2003.
*37 Darlene Hatchell, Denham Springs, Pro SeAppellant.
Sherman Q. Mack, Albany, Counsel for Appellant Raymond Hatchell.
Eric L. Pittman, William S. Dykes, Denham Springs, Counsel for Appellee Jacqueline Hatchell Borchgrevink.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
FITZSIMMONS, J.
Petitioners, Paulette Hatchell Drummond (Mrs. Drummond), Darlene Hatchell Blackwell, and Raymond Coe Hatchell (Mr. Hatchell) contested a petition by Jacqueline Hatchell Borchgrevink (Mrs. Borchgrevink) for probate of notarial testament of a copy of a "Last Will and Testament" of Rudolph Holmes Hatchell (decedent) and for confirmation of testamentary executrix. The trial court held that the copy of the will presented for probate was valid. Mr. Hatchell appealed. Following our review of the evidence and applicable law, this court affirms.
The decedent executed a will on December 17, 1987. In the will, the decedent disinherited petitioners for failure to communicate with him for two years. He named his remaining daughter, Mrs. Borchgrevink, as the residual legatee of his estate. After decedent's death on July 24, 2000, Mrs. Borchgrevink presented a copy of the 1987 will for probate because the original will was missing. Her sibling petitioners opposed the probate of the copy of the will. Following the trial court judgment, petitioners filed a motion for new trial asserting the discovery of at least one additional witness who could testify to the fact that a new will was executed by the decedent after the 1987 will.[1]
The trial court denied the motion for new trial. Raymond Hatchell has appealed *38 the judgment. In a single assignment of error, Mr. Hatchell asserts that the court erred in not considering evidence of a new testament that was demonstrative of decedent's intent to revoke the December 17, 1987 will. Although Mr. Hatchell's assignment of error could be construed as strictly limited to the denial of motion for new trial, it is somewhat ambivalent. Therefore, we will incorporate a discussion of the validity, vel non, of the trial court judgment recognizing the copy of the will for purposes of probation.
When a will cannot be found at the testator's death, there arises a presumption that the testator has destroyed the will with the intent of revoking it. Succession of Talbot, 530 So.2d 1132, 1134-1135 (La.1988) The presumption may be rebutted by "clear proof" (1) that the testator made a valid will; (2) of the contents or substantiality of the will; and (3) that the will was not revoked by the testator. In Re Succession of Claiborne, 99-2415, p. 3 (La.App. 1 Cir. 11/3/00), 769 So.2d 1267, 1268, writs denied, XXXX-XXXX (La.2/16/01), 786 So.2d 98 and XXXX-XXXX (La.2/16/01), 786 So.2d 99 (citing Succession of Nunley, 224 La. 251, 69 So.2d 33, 35 (1953)). An exponent of such a will assumes the burden of demonstrating that the testator did not intend to revoke the will by destroying it. See Succession of Talbot, 530 So.2d at 1135. In this regard, the jurisprudence has created a sliding scale of the requisite proof to refute the presumption, depending on the weakness or strength of the evidence surrounding the lost original. In Re Succession of Claiborne, 99-2415, p. 4, 769 So.2d at 1269.
In the case at hand, Mrs. Borchgrevink testified that her father gave her a copy of the contested will shortly after he had confected it in 1987. She also saw the original will at her father's house on several occasions, particularly in 1988 when she was assisting him with bills and shopping. Mrs. Borchgrevink stated that the last time she saw the original 1987 will occurred at the home of her sister, Mrs. Drummond, after her father went to the hospital in June 1999. At that time, the children had collectively taken all of their father's important papers to Mrs. Drummond's home. The evidence revealed that Mrs. Borchgrevink assumed the primary role as caretaker for the decedent during the last years of his life. The decedent never returned to his own home before he passed away in August 2000.
Mrs. Drummond testified that she "knew nothing of the 1987 will" until Mrs. Borchgrevink advised her about it via email. She denied ever having physically possessed an original last will and testament. Mr. Hatchell stated that he was not aware of a 1987 will until opposing counsel showed him a copy. He did not recall if his sister, Mrs. Drummond, had indicated to him that everything had been left to Mrs. Borchgrevink. William Rudolph Hatchell, decedent's grandson and son of Mr. Hatchell, admitted that his father and the decedent were not "getting along too well" for years prior to the decedent's death.
Counsel for Mrs. Borchgrevink introduced copies of four emails between Mrs. Drummond and Mrs. Borchgrevink. The first one, dated September 15, 1999, was sent several months after the decedent had gone to the hospital. In the transmission, Mrs. Drummond advised Mrs. Borchgrevink of sibling "difficulty dealing with the fact that Dad has willed his portion of the property to you." In a second email, dated September 20, 1999, Mrs. Borchgrevink requested a copy of the will that "you guys are so upset about ...." Mrs. Drummond responded that she would fax Mrs. Borchgrevink a copy the next morning. The emails corroborate the position of Mrs. *39 Borchgrevink and undermine petitioners' case vis-à-vis the 1987 will. Thus, this court does not attribute error to the trial court in its determination that Mrs. Borchgrevink successfully rebutted the presumption that the 1987 will had been revoked.
Turning to the motion for new trial, it is asserted that there was sufficient evidence introduced to affirm the existence of a subsequent testament after decedent's will of December 17, 1987. In the motion for new trial, Mr. Hatchell indicated that there were "some new witnesses" and "new evidence" which required additional discovery. During oral argument, movant stated that the notary public of a purported subsequent will had been found during the prior week and that counsel was trying to schedule her deposition. However, no evidence to substantiate the existence of a subsequent will was presented; nor was there any supportive testimony by witnesses.
Louisiana Code of Civil Procedure articles 1972 and 1973 address the grounds necessary to grant a new trial. In order to successfully assert a motion for new trial based on La. C.C.P. art.1972, a movant is required to demonstrate the "discovery of evidence important to the case that they could not, with due diligence have obtained before or during the trial." The due diligence requirement was not met; therefore, movants are precluded from the peremptory grounds for a motion for new trial. Thereafter, article 1973 provides a trial court with the discretionary right to grant a new trial in cases in which there has been a demonstration of "good ground therefor[.]" However, in the instant case, movants merely alluded to an unnamed notary public who purportedly participated in the execution of a subsequent will. "Good ground" demands greater specificity than movants provided. Accordingly, the trial court did not abuse its discretion in its denial of the motion for new trial.
The judgment of the trial court is affirmed. All costs associated with this appeal are assessed to Raymond Coe Hatchell.
AFFIRMED.
GAIDRY, J., concurs and assigns reasons.
GAIDRY, J., concurring and assigning reasons.
While I agree with the outcome in this case, I disagree with the analysis of the court. Specifically, I disagree that the rebuttable presumption of revocation adopted by the court in Succession of Talbot, 530 So.2d 1132 (La.1988), ever arose in this case.
In Talbot, the Louisiana Supreme Court adopted the uniformly adhered to rule that "the failure to find a will which was duly executed and in the possession of, or readily accessible to, the testator, gives rise to a legal presumption of revocation by destruction." (Emphasis added).
In this case, the evidence established that the 1987 testament was neither in the possession of, nor readily accessible to, the decedent prior to his death. The decedent was in a nursing home, and the original testament was proven to be in the possession of Mrs. Drummond. Therefore, the presumption of revocation adopted by the court in Talbot never arose in this case.
Because there is no presumption that the will was revoked in this case, we are simply dealing with a lost document; that is, probating a copy of a will where the original has been lost. Under article 1004 of the Louisiana Code of Evidence, a copy is admissible in place of the original when the original has been lost and where the proponent of the document has not lost or *40 destroyed it in bad faith. Mrs. Borchgrevink, the proponent of the lost document in this case, did not have possession of the lost document and is not the one who lost it. Therefore, the copy of the will is acceptable for probate in this case in place of the original. See Succession of O'Brien, 168 La. 303, 121 So. 874 (1929).
NOTES
[1] Darlene Hatchell Blackwell asserted a separate subsequent pro se motion for new trial in which she alleged that she had discovered proof within her possession which negated testator's cause for disinherison. She also challenged the testator's "statements of fact" and, therefore, his state of mind at the time of the execution of the contested will. On appeal, Darlene Hatchell Blackwell has filed a pro se "Statement to the Court," in which she states that "Plaintiff has not yet completed her action in trial court," and she "reserves the right to appeal in a timely manner from the trial court's ruling at such time as Plaintiff's actions in the trial court have been completed." The record does not reveal further action by Mrs. Blackwell.