THERIOT, J.
| ¡¿The appellants, John King and Minnie Catha King (“the Kings”), appeal the judgment of the Twenty-First Judicial District Court in favor of the appellee, Sheryl An-drus Carnegie, administratrix of the succession of Evelyn Heloise Andrus Catha. In addition, the appellee has filed a motion in this Court to convert the appeal from suspensive to devolutive. For the following reasons, we grant the appellee’s motion and affirm the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
The decedent, Evelyn Heloise Andrus Catha, executed a notarial last will and testament on November 29, 2014.[1] In that will, the Kings were designated as co-executors of the estate. The decedent died on November 21,2015.
On November 23, 2015, Ms. Carnegie filed a petition for appointment of adminis-tratrix and to appoint an attorney to search for any existing wills executed by the decedent. It was Ms. Carnegie’s belief, according to the petition, that the decedent died intestate and requested that she be appointed administratrix over the estate.[2] The district court appointed her adminis-tratrix on this date.
On December 8, 2015, Húey Oscar Lowery, III[3] filed a petition to be appointed co-administrator of the decedent’s estate, claiming that the decedent did have a valid handwritten olographic will and died testate.[4] Ms. Carnegie opposed1 his petition. Ms. 'Carnegie believed that the purported handwritten olographic will was invalid in form as prescribed by La. C.C. Rart. 1575. Mr. Lowery moved to revoke Ms. Carnegie’s status as administratrix, claiming that as a legatee of the decedent, he was more familiar with the decedent’s wishes than Ms. Carnegie, who was not a legatee.
On December 21, 2015, the Kangs filed a petition to probate the decedent’s notarial *127 will, attaching the will to the petition, and requesting that they be appointed co-exee-utors. The district court ordered that the Kings be appointed co-executors. Mr. Lowery subsequently filed his own petition, to probate the decedent’s hand-written olo-.graphic will, requested that he be appointed executor, and attached a copy of the purported olographic will to the petition.
Ms. Carnegie petitioned the district court to annul both the notarial will and the olographic will.[5] As to the notarial will, she claimed that the decedent had revoked it. Ms. Carnegie alleges in her petition that she provided to the Kings’ counsel proof of the decedent’s; revocation of .the notarial will, which the Kings did not present to the district court prior to dbtaining ex parte probate of the notarial will.
As to the olographic will, Ms. Carnegie alleged that it failed to meet the legal requirements of a valid olographic will because it was not signed at the end by the decedent, nor was it entirely written in the decedent’s handwriting, nor was it properly dated. Ms. Carnegie additionally claimed that the olographic will was procured through the fraud, duress, or other undue influence exerted upon the decedent by Mr. Lowery.
Trial was held on January 19, 2016. The district court found the olographic will to be invalid as to form and granted a new trial on the probate of the notarial will. The district court found that the notarial will 14had been validly revoked by the decedent. Lastly, the district court ordered that the succession would proceed intestate and reinstated the previous order appointing Ms. Carnegie as administratrix of the succession. It is from this judgment of the district court that the Kings have sus-pensively appealed.
MOTION TO CONVERT APPEAL
Initially we address the motion before us filed by Ms. Carnegie to convert .the Kings’ suspensive.appeal to .a devolu-tive appeal. A, suspensive appeal suspends or delays the effect or execution of an appealable judgment, and security must be furnished in prder for the judgment to be suspended. La. C.C.P. art. 2123(A). A devolutive appeal does not suspend the effect of an appealable judgment. La. C.C.P. art. 2087(A). A judgment or order of a trial court appointing or removing a legal representative shall be executed provisionally notwithstanding an appeal therefrom. La. C.C.P. art. 2122. Therefore, appeals are authorized from judgments appointing or removing succession representatives. In re Succession of LeBouef, 2013-0209 (La.App. 1 Cir. 9/9/14), 153 So.3d 527, 533.
In the instant case, the effect of the district court’s' judgment was to reinstate Ms. Carnegie as administratrix of the succession. This is the situation contemplated by La. C.C.P. art. 2122. Since such judgments shall be “executed provisionally nóte withstanding an appeal,” appeals taken from such judgments are necessarily devolutive. La. C.C.P. art. 2122; LeBouef, 153 So.3d at 533. Based on our previous holding in LeBouef, we grant. Ms. Carnegie’s motion to convert the Kings’ suspen-sive appeal to a devolutive appeal.
^ASSIGNMENT OF ERROR
The sole assignment of error raised by the Kings is whether the district court erred in finding the decedent had effectively revoked her notarial will.[6]
*128 STANDARD OF REVIEW
The question in the instant case is whether a presumption of revocation arises from the intentional destruction of one multiple original of the will. The district court’s findings of fact regarding a presumed revocation of a will by destruction are subject to manifest error review. In re Succession of Doucet, 42,963 (La. App. 2 Cir. 2/6/08), 975 So.2d 738, 742. Destruction of a will by the testator is the most effective means of revoking it. In re Succession of Jones, 356 So.2d 80, 83 (La. App. 1 Cir. 1978), writ denied, 357 So.2d 1168 (La. 1978) The testator’s intentional destruction of her will gives rise to a rebuttable presumption that she intended to revoke her testament and all copies thereof. See Succession of Talbot, 530 So.2d 1132, 1134-1135 (La. 1988). However, this presumption is rebuttable and may be overcome by sufficient evidence. Id. at 1135.
DISCUSSION
The district court based its ruling that the notarial will had been validly revoked pursuant to La. C.C. art. 1607, which states:
Revocation of an entire testament occurs when the testator does any of the following:
(1) Physically destroys the testament, or has it destroyed at his direction.
(2) So declares in one of the forms prescribed for testaments or in an authentic act.
(3) Identifies and clearly revokes the testament by a writing that is entirely written and signed by the testator in his own handwriting.
| Jn its oral reasons for judgment, the district court stated it placed great weight on the testimony of Bryan Adams regarding the decedent’s intent to destroy the notarial will. Mr. Adams purchased property from the decedent, then worked for the decedent as a farmhand and collected rent for the decedent from her tenants. Mr. Adams claimed to be familiar with the decedent’s signature, as he had seen it many times on documents she had signed.
At the trial, Mr. Adams was shown an original copy of the notarial will that had the portion containing the signature and dates torn off at the bottom. Another signature appeared at the top of the document, and Mr. Adams recognized it as the signature of the decedent. The signature is followed by handwritten notes which stated as follows: “Apr. 2015... This is to be revoked by me.” The majority of the document’s typed text had been crossed out or scribbled over. On the back of the document is more handwritten notes which appear to be several bequests. Mr. Adams recognized his name in the handwritten notes and testified that it appeared to be written in the way the decedent would write his name. He also noted that in the handwritten portion of the will his first name was spelled correctly, but in the typed portion his first name was misspelled. He testified that the decedent knew how to spell his name correctly. He further testified that the decedent had told him that she had a will but that she “had tore it up.” Although the duplicate original of the notarial will introduced by Ms. Carnegie was not torn up completely, the portion containing the signatures and the date was torn from the bottom.
The Kings note that the handwritten language “to be revoked” suggests that the decedent was not revoking the will at the moment she wrote it, but that she intended to revoke the will sometime in the future. |7However, there are indications other than *129 the language cited by the Kings that the decedent wanted the will to be revoked immediately. The signatures of the testatrix, notary and witnesses, along with the date have been torn from the bottom of the document. We find such a destruction of a last will and testament shows unequivocally that the decedent intended to revoke the will and all of its copies immediately.
The Kings also offer the testimony of Carolyn Slaven, the notary public who notarized the will, to prove that the decedent had not revoked the notarial will. Ms. Sla-ven had also been familiar with the decedent, knowing her for about forty years. In addition to notarizing the will in November of 2014, Ms. Slaven also notarized a power of attorney the same month, which named the Kings as mandataries. The power of attorney does not appoint the Kings as administrators over the decedent’s estate. Ms. Slaven executed three originals of the notarial will, keeping one and giving two to the decedent. Ms. Slaven also testified that she believed the duplicate originals had been torn up, and that the decedent had expressed to her the intent to change the will in April of 2015. The decedent had told Ms. Slaven that she would make some notes and schedule an appointment with her at a later time. However, the decedent never returned to rewrite the will.
The Kings aver that Ms. Slaven’s testimony indicates that the decedent had not yet revoked her will at the time of her death. We disagree. While the decedent may not have taken any actions with Ms. Slaven to revoke her will, the evidence does indicate she did take actions on her own to revoke the will. We find that the district court did not err in finding that the torn and defaced duplicate original of the notarial will, corroborated by the testimony of Mr. Adams, was sufficient proof of the decedent’s revocation of the notarial will pursuant to La. C.C. art. 1607(1).
DECREE
The motion filed by the appellee, Sheryl Andrus Carnegie, to convert the instant appeal from a suspensive appeal to a de-volutive appeal is granted. The judgment of the Twenty-First Judicial District Court to reinstate Ms. Carnegie as admin-istratrix over the succession of the decedent, Evelyn Heloise Andrus Catha, and to invalidate the notarial will is affirmed. All costs of this appeal are assessed to the appellants, John E. King and Minnie C. King.
MOTION GRANTED; JUDGMENT AFFIRMED.
Higginbotham, J. dissents.

. This last will and testament was’ valid in form pursuant to La. C.C. art. 1577.

.The decedent was widowed at the time of her death, was predeceased by her only sibling, and had no children. Ms. Carnegie . claimed in the' petition that she was the daughter of Byron Merton Andrus, who she believed was the closest surviving, relative of the decedent.

. Mr. Lowery is not a party to this appeal.

. Mr. Lowery was a legatee in the decedent’s notarial will,

. Ms. Carnegie filed this petition in her capacity as mandatary for her father, who is a first cousin to the decedent and a legal intestate heir.

. The validity of the olographic will is not before us on appeal.